No. 21-55459

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Amy Thomas-Lawson; Brenda Boley; Miguel Padilla;
William Green, on behalf of themselves and all those
similarly situated,

Plaintiffs-Appellants,

*v.*

Carrington Mortgage Services, LLC,

Defendant-Appellee.

On Appeal from the United States District Court
for the Central District of California

Case No. 20-cv-7301

Hon. Otis D. Wright, II

**Brief of *Amicus Curiae*
Consumer Financial Protection Bureau
in Support of Plaintiffs-Appellants**

Stephen Van Meter
  *Acting General Counsel*
Steven Y. Bressler
  *Acting Deputy General Counsel*
Kristin Bateman
  *Acting Assistant General Counsel*
Joseph Frisone
  *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9287 (telephone)
(202) 435-7024 (facsimile)
Joseph.Frisone@cfpb.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ii

INTEREST OF AMICUS CURIAE ............................................................. 1

STATEMENT ................................................................................................ 1

    A.    Statutory and Regulatory Background ............................................. 1

    B.    Pay-to-Pay Fees .................................................................................4

    C.    Facts and Procedural History ............................................................6

SUMMARY OF ARGUMENT ...................................................................... 8

ARGUMENT ............................................................................................... 12

I.    Pay-to-pay fees are not "permitted by law" unless a law expressly authorizes such fees ............................................................................ 12

    A.    Interpreting "permitted by law" to mean "permitted by any valid contract" is inconsistent with the text of Section 1692f(1) ............. 14

    B.    An "amount" is "permitted by law" under Section 1692f(1) only if a law expressly authorizes it ........................................................ 17

    C.    Allowing debt collectors to charge pay-to-pay fees absent express authorization is inconsistent with the FDCPA's purposes. ............ 19

II.    An "amount" does not need to be "incidental to the principal obligation" to be covered under Section 1692f(1). .................................. 24

III.    The Bureau's interpretation of Section 1692f(1) warrants *Skidmore* deference. .................................................................................... 27

CONCLUSION ............................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**                                                              Page(s)

*Ali v. Fed. Bur. of Prisons*,
  552 U.S. 214 (2008) ................................................................25

*Arizona State Bd. For Charter Schools v. Dep't. of Educ.*,
  464 F.3d 1003 (9th Cir. 2006) .................................................25

*Artichoke Joe's Cal. Grand Casino v. Norton*,
  353 F.3d 712 (9th Cir. 2003) .............................................17, 18

*Bank of Am. v. City & Cnty. of San Francisco*,
  309 F.3d 551 (9th Cir. 2002) ...................................................27

*Boise Cascade Corp. v. EPA*,
  942 F.2d 1427 (9th Cir. 1991) .................................................15

*De Dios v. International Realty & Investments*,
  641 F.3d 1071 (9th Cir. 2011) ...................................................3

*Diaz v. Kubler Corp.*,
  785 F.3d 1326 (9th Cir. 2015) ...................................................3

*Fed. Express Corp. v. Holowecki*,
  552 U.S. 389 (2008) ................................................................29

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
  314 U.S. 95 (1941) ..................................................................25

*Hernandez v. Williams, Zinman & Parham PC*,
  829 F.3d 1068 (9th Cir. 2016) .................................................18

*Johnson v. Riddle*,
  305 F.3d 1107 (10th Cir. 2002) ..........................................14, 16

*Rico v. Ducart*,
  980 F.3d 1292 (9th Cir. 2020) ...................................................6

*Rumsey Indian Rancheria of Wintun Indians v. Wilson*,
  64 F.3d 1250 (9th Cir. 1994) ...................................................17

*Seeger v. AFNI, Inc.*,
    548 F.3d 1107 (7th Cir. 2008) .............................................................................18

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)...............................................................................................28

*Torliatt v. Ocwen Loan Servicing, LLC*,
    No. 19-cv-04303, 2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) .......................26

*Tuttle v. Equifax Check*,
    190 F.3d 9 (2d Cir. 1999)......................................................................................19

*United States v. Gonzales*,
    520 U.S. 1 (1997)...................................................................................................25

*United States v. Launder*,
    743 F.2d 686 (9th Cir. 1984) ................................................................................17

*United Transp. Union v. BNSF Ry. Co.*,
    710 F.3d 915 (9th Cir. 2013) ................................................................................14

*Van Asdale v. Int'l Game, Tech.*,
    763 F.3d 1089 (9th Cir. 2014) ..............................................................................27

**Statutes**

12 U.S.C. § 5491(a)......................................................................................................1

12 U.S.C. § 5512(b)(4)(B)..........................................................................................28

15 U.S.C. § 1692(a)....................................................................................................20

15 U.S.C. § 1692(b)........................................................................................18, 22, 23

15 U.S.C. § 1692(e)..................................................................................................2, 20

15 U.S.C. § 1692f........................................................................................................2, 27

15 U.S.C. § 1692f(1).............................................................................................*passim*

15 U.S.C. § 1692k(a)......................................................................................................2

15 U.S.C. § 1692k(d)......................................................................................................2

15 U.S.C. § 1692k(e) ................................................................28

15 U.S.C. § 1692*l* ....................................................................2

15 U.S.C. § 1692*l*(a) ...........................................................2, 19

15 U.S.C. § 1692*l*(b)(6) ....................................................1, 3, 28

15 U.S.C. § 1692*l*(d) ........................................................1, 2, 28

Pub. L. No. 95-109, § 802(e), 91 Stat. 874, 874 ......................2

Pub. L. No. 111-203, 124 Stat. 1376, 1964, 2093 ..................1, 3

**Rules**

Fed. R. App. P. 29(a)(2) ............................................................1

**Other Authorities**

Association for Finance Professionals, *Payments Cost Benchmarking Survey*,
  https://www.afponline.org/docs/default-source/default-document-
  library/pub/2015-payments-cost-benchmarking-report ...................5, 6

Black's Law Dictionary (11th ed. 2019) ................................................25

CFPB Compliance Bulletin 2017-01,
  82 Fed. Reg. 35936 (2017) .......................................................3, 27

CFPB: Fall 2014 Supervisory Highlights,
  https://files.consumerfinance.gov/f/201410_cfpb_supervisory-
  highlights_fall-2014.pdf.........................................................4, 28

CFPB: Fall 2015 Supervisory Highlights,
  https://files.consumerfinance.gov/f/201510_cfpb_supervisory-
  highlights.pdf ...................................................................4, 28

Collins English Dictionary (12th ed. 2014).............................................25

Restatement (Second) of Contracts § 4 (1981) .........................................15

Staff Commentary On the Fair Debt Collection Practices Act,
  53 Fed. Reg. 50097 (Dec. 13, 1988) ...........................................3, 19, 29

S. Rep. No. 95-382 (1977) ...............................................................*passim*

Webster's Third New International Dictionary (1976) ....................................17, 24

## INTEREST OF AMICUS CURIAE

The Consumer Financial Protection Bureau, an independent agency of the United States, files this brief pursuant to Fed. R. App. P. 29(a)(2).

In 2010, Congress established the Bureau and vested it with authority to promulgate rules under the Fair Debt Collection Practices Act (FDCPA) as well as to enforce compliance with the Act's requirements. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376, 1964, 2093 (2010) (codified at 12 U.S.C. § 5491(a) and 15 U.S.C. § 1692*l*(b)(6), (d)). This case concerns a provision of the FDCPA, 15 U.S.C. § 1692f(1), that prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," including "collect[ing] … any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Given its authority over the FDCPA, the Bureau has a substantial interest in this Court's interpretation of this provision.

## STATEMENT

### A. Statutory and Regulatory Background

1. Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively

1

disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Pub. L. No. 95-109, § 802(e), 91 Stat. 874, 874 (codified at 15 U.S.C. § 1692(e)). To achieve those ends, the FDCPA imposes various restrictions on debt collectors' debt collection activity. Relevant here is Section 1692f, which provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The provision then states that "[w]ithout limiting the general application of the foregoing, the following conduct is a violation of this section" and enumerates eight specifically prohibited practices, including the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

To ensure compliance with these and the FDCPA's other requirements, Congress provided a private right of action, *id.* § 1692k(a), (d), and authorized enforcement by a number of federal agencies, including the Bureau, *id.* § 1692*l*.

2. From the time of the FDCPA's enactment until Congress created the Bureau in 2010, the Federal Trade Commission (FTC) was the agency that administered, and had primary responsibility for enforcing, the FDCPA. *See* 15 U.S.C. § 1692*l*(a) (2010). The FTC did not have general rulemaking authority under the Act, *see id.* § 1692*l*(d) (2010), but its staff issued Commentary that set

forth "staff interpretations" of the FDCPA. *See* Staff Commentary On the Fair

Debt Collection Practices Act, 53 Fed. Reg. 50097, 50101 (Dec. 13, 1988).

Although the Staff Commentary is "not binding on the Commission or the public,"

courts have looked to it for guidance, including the Ninth Circuit. *See*, *e.g.*, *Diaz v.*

*Kubler Corp.*, 785 F.3d 1326, 1328 (9th Cir. 2015); *De Dios v. International*

*Realty & Investments*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011). As relevant here,

FTC staff stated that, under Section 1692f(1), a "debt collector may attempt to

collect a fee or charge in addition to the debt if . . . the contract [creating the debt]

is silent but the charge is otherwise expressly permitted by state law." 53 Fed. Reg.

at 50108. Conversely, FTC staff stated that "a debt collector may not collect an

additional amount if . . . the contract does not provide for collection of the amount

and state law is silent." *Id*.

3. The Bureau now administers the FDCPA. In 2010, Congress passed the

Dodd-Frank Wall Street Reform and Consumer Protection Act, which created the

Bureau and granted it authority to enforce the FDCPA. Pub. L. No. 111-203, §

1089, 124 Stat. 1376, 2093 (codified at 15 U.S.C. § 1692*l*(b)(6)). In 2017, the

Bureau issued a compliance bulletin that "provides guidance to debt collectors

about compliance with the [FDCPA] when assessing phone pay fees," like the

phone pay fee at issue here. CFPB Compliance Bulletin 2017-01, 82 Fed. Reg.

35936, 35936 (2017). The Bulletin summarizes the findings of Bureau staff that

under Section 1692f(1), debt collectors may collect such pay-to-pay fees only if the underlying contract or state law expressly authorizes those fees. In particular, the Bulletin states that in at least one supervisory exam, Bureau examiners found that a debt collector "violated [Section 1692f(1)] when they charged fees for taking mortgage payments over the phone" where the underlying contracts creating the debt did not expressly authorize collecting such fees and where the relevant state law did not "expressly permit collecting such fees." *Id.* at 35938 (explaining that the Bureau examiners had instructed the company to collect pay-by-phone fees only "where expressly authorized by contract or state law"); *see also* CFPB: Fall 2014 Supervisory Highlights, at 7, *available at* https://files.consumerfinance.gov/f/201410_cfpb_supervisory-highlights_fall-2014.pdf (similar); CFPB: Fall 2015 Supervisory Highlights, at 20-21, *available at* https://files.consumerfinance.gov/f/201510_cfpb_supervisory-highlights.pdf (similar).

### B. Pay-to-Pay Fees

So-called "convenience" fees, or pay-to-pay fees, are fees imposed on consumers to make payments through a particular channel. For instance, while companies may allow consumers to make payments in person or by mail for free, they may charge consumers a fee to make payments over the phone or online.

According to the Bureau's market understanding, most third-party debt collectors allow consumers to repay their debts over the phone or online, and the majority of those collectors do not impose any additional fees for such payments. This may be in part because the phone and online payment methods that are marketed as convenient for consumers are also more cost-effective for the debt collectors. That is, it is generally cheaper and less time-consuming for debt collectors to process phone and online payments than it is to process paper-check payments delivered by mail or in person.

Still, some collectors impose fees on consumers repaying their debts over the phone or online, often relying on independent third-party payment processors to process those payments. Frequently, these debt collectors will charge consumers a fee for phone and online payments that is substantially higher than the price debt collectors pay to third parties to process such payments. According to the Bureau's market understanding, while debt collectors typically charge consumers pay-to-pay fees of between $4 and $12, debt collectors typically pay third-party processors only $0.50 or less per transaction.[1] By contrast, these same collectors do not charge

---

[1] This estimate of the debt collectors' costs in initiating and receiving ACH (Automated Clearing House) transfers—the most common type of payment made by phone or online—is consistent with estimates from industry professionals. *See*, *e.g.*, Association for Finance Professionals, *Payments Cost Benchmarking Survey*, at 8 (2015) (finding the median cost range for sending and receiving ACH payments is between $0.37 and $0.75), *available at*

consumers extra to pay by check even though processing paper checks can cost debt collectors between $1 and $4 per check, depending on the size of the company.[2]

## C. Facts and Procedural History

Defendant Carrington Mortgage Services collected on mortgage payments owed by Plaintiffs Amy Thomas-Lawson, William Green, Brenda Boley, and Miguel Padilla.[3] Excerpts of Record (ER) 219. Carrington provides several methods for consumers to make mortgage payments—including paying online, for which Carrington charges an additional $5 fee, and paying by phone, for which it charges an additional $10 or $20 fee. ER-223. These online and phone payments are processed by Speedpay, a third-party mortgage payment processing service. *Id.*

In December 2019, Plaintiffs Thomas-Lawson, Green, and Boley filed a putative class action against Carrington alleging that in charging these pay-to-pay

---

https://www.afponline.org/docs/default-source/default-document-library/pub/2015-payments-cost-benchmarking-report. An ACH transfer is an electronic fund transfer made between accounts at banks or credit unions across the Automated Clearing House network.

[2] *See* Association for Finance Professionals, *Payments Cost Benchmarking Survey*, at 7 ("The median cost range to receive checks is $1.01 to $2.00[, and s]maller organizations with annual revenues of less than $1 billion report . . . a median range of $2.01 to $4.00.").

[3] The facts are drawn from plaintiffs' complaint, as this is an appeal from the district court's grant of a motion to dismiss. *See Rico v. Ducart*, 980 F.3d 1292, 1295 n.4 (9th Cir. 2020).

fees, Carrington violated Section 1692f(1)'s prohibition on debt collectors collecting "any amount" that is not "expressly authorized by the agreement creating the debt or permitted by law," as well as various state laws. ER-217, 234. Carrington moved to dismiss on the grounds that it was not a debt collector; that the pay-to-pay fees were not "incidental to the principal obligation" and therefore not subject to Section 1692f(1); and that the fees were "permitted by law" in any event. ER-9.

The district court first held that Plaintiffs had sufficiently alleged that their debts were in default at the time Carrington began servicing them, and that Carrington therefore qualified as a "debt collector" under the FDCPA. ER-11. Next, the district court held that whether the pay-to-pay fees were "incidental" to the underlying mortgage obligations was irrelevant to whether the fees were prohibited by Section 1692f(1). ER-13. Acknowledging a split in authority among district courts in the Ninth Circuit on that issue, the court found that it was "clear from the statute's plain language that an 'amount' collected does not need to be 'incidental to the principal obligation' to violate [Section] 1692f(1)." *Id*. The court thus stated that it did not need to determine "whether Carrington's . . . fees are incidental to Plaintiffs' mortgage debts, as such a determination would not dispose of Plaintiffs' claims in any event." *Id*.

Finally, the district court held that Carrington nonetheless did not violate Section 1692f(1) because the pay-to-pay fees were "permitted by law." ER-13-14. In so holding, the district court did not identify a specific "law" that "permitted" the fees. *See id*. Rather, the court found it "persuasive" that the fees were potentially the "subject of valid, separate agreements into which Plaintiffs freely and lawfully entered." ER-13 (stating that it would not "go[] so far as to conclude that Plaintiffs entered into contracts not described in the Complaint"). The district court then stated, without explanation, that nothing in the FDCPA prohibited such separate agreements. ER-14. As a result, the district court held that Section 1692f(1) did not prohibit Carrington from collecting pay-to-pay fees and granted Carrington's motion to dismiss Plaintiffs' FDCPA claims. *Id*.

## SUMMARY OF ARGUMENT

The Fair Debt Collection Practices Act (FDCPA) prohibits debt collectors from "collect[ing] . . . any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Relevant here are two aspects of the district court's decision interpreting this provision. First, the district court erred in holding that fees charged to consumers repaying their debts over the phone or online were "permitted by law" where no law expressly or affirmatively authorized such fees. Second, the court correctly

held that a fee does not need to be "incidental to the principal obligation" in order to be a covered "amount[]."

1. Under Section 1692f(1), debt collectors may obtain money from consumers in the course of collecting a debt in only two circumstances: (1) when the agreement creating the debt expressly authorizes it and (2) when the amount is "permitted by law." The district court held that pay-to-pay fees were "permitted by law" under Section 1692f(1)'s second prong, despite not identifying any law that expressly permitted these fees. Instead, the court appears to have held that the collection of such fees was "permitted by" general principles of contract law. That interpretation of "permitted by law" is inconsistent with Section 1692f(1)'s text and purpose.

Understanding Section 1692f(1) to allow debt collectors to collect fees whenever authorized by an agreement that is valid under general principles of contract law would nullify Section 1692f(1)'s careful delineation of the first category of collectible fees—those "*expressly* authorized by *the agreement creating the debt*." After all, the "agreement creating the debt" is, by definition, a valid agreement under state contract law. Thus, reading Section 1692f(1) to allow debt collectors to collect amounts authorized (implicitly or expressly) by *other* agreements would disregard Congress's deliberate choice. Further, the district court's interpretation ignores Section 1692f(1)'s focus on "amounts" being

"permitted by law." Under Section 1692f(1), it is not enough for the agreement to be "permitted by law"; rather, the "amount" itself must be, and general principles of state contract law standing alone do not provide for the collection of any specific amounts.

Given this statutory context, "permitted by law" under Section 1692f(1) can only refer to amounts that are expressly or affirmatively authorized by law. That, of course, is consistent with a common meaning of "permit." And while "permit" can in some contexts also mean to allow something by not preventing it, that meaning does not make sense in the context of Section 1692f(1). That provision authorizes debt collectors to collect amounts "permitted *by law*," and it is hardly natural to read that phrase to mean "not prohibited by law."

Understanding Section 1692f(1)'s "permitted by law" prong to require affirmative authorization is also most consistent with Section 1692f(1)'s purpose. The FDCPA was designed to rein in unethical debt collectors, and Section 1692f(1) specifically was designed to limit the amounts that debt collectors could try to collect from consumers. But under the district court's interpretation, debt collectors can collect additional fees, like the pay-to-pay fees at issue here, whenever no other law specifically prohibits them—leaving debt collectors with the power and discretion to try to collect additional fees during the collection process. This is particularly problematic given that consumers have no ability to

shop around for a better deal. And it's not as if these pay-to-pay fees are necessary for debt collectors to offer phone or online payment options that consumers might want, as it is generally cheaper for collectors to accept payment by phone or online than to accept payment by mail (which is typically the fee-free option). Pay-to-pay fees are thus most often just a way for debt collectors to take advantage of consumers by trying to extract more money than they originally bargained for or reasonably expected to pay.

2. Separately, the district court held that whether the pay-to-pay fees are "incidental to the principal obligation" is irrelevant in determining whether such fees are covered by Section 1692f(1). That holding was correct. The statute by its terms covers the collection of "*any* amount[s]"—an all-encompassing term. (Emphasis added.) And the provision specifies that those amounts "*includ[e]*" fees "incidental to the principal obligations." (Emphasis added.) The word "including" is a term of illustration, signifying that what follows is an example of the preceding principle, not an all-embracing definition. Thus, "fee[s] . . . incidental to the principal obligation" are an example of a covered amount, not the only amounts that are covered. Pay-to-pay fees are therefore covered by Section 1692f(1) regardless of whether they are considered "incidental to the principal obligation."

In any event, even if Section 1692f(1) covered only those fees that are "incidental to the principal obligation," pay-to-pay fees would still be covered

because they are "incidental to the principal obligation." Indeed, if the principal obligation—the underlying mortgage debt—did not exist, then neither would the pay-to-pay fee.

3. Finally, to the extent that the Court is left with any doubt over the meaning of Section 1692f(1) after consulting the statute's text and purpose, it should defer to the views of the Bureau, which is charged with implementing and enforcing the FDCPA. In particular, given the Bureau's authority over the FDCPA, its previous statements from 2014, 2015, and 2017 on the scope of Section 1692f(1), and the reasoning set forth in this brief, the Bureau's interpretation of Section 1692f(1) is entitled to *Skidmore* deference.

## ARGUMENT

## I. Pay-to-pay fees are not "permitted by law" unless a law expressly authorizes such fees.

The Fair Debt Collection Practices Act (FDCPA) prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," including "collect[ing] . . . any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). By the provision's own terms, there are two acceptable bases for debt collectors to obtain money from a consumer in the course of collecting a debt. First, debt collectors can collect amounts that are "expressly authorized by the

agreement creating the debt." Second, collectors can collect amounts when they are "permitted by law." The opinion below would establish a third category of collectible amounts: those that are authorized (expressly or impliedly) by an otherwise lawful agreement other than the one that created the debt.

This Court should reject the district court's interpretation of section1692f(1) for three related reasons. First, it is inconsistent with the FDCPA's text. The district court's approach implicitly relies on the view that general principles of contract law are the "law" that "permitted" Carrington to charge the fees in this case. But this view would negate Congress's deliberate choice to permit fees that are "*expressly* authorized by the *agreement creating the debt*" as opposed to fees that consumers might agree to in any way in any agreement. Second, because any other reading would negate that choice by Congress, the better view of Section 1692f(1)'s "permitted by law" prong, and the one that courts and regulators have long endorsed, is that an amount is permitted by law only when a law expressly or affirmatively authorizes it. Finally, the district court's interpretation is inconsistent with the FDCPA's purposes. Section 1692f(1) is designed to protect consumers by limiting the amounts that debt collectors can try to collect from consumers. But the district court's interpretation allows debt collectors to take advantage of consumers by tacking on additional fees during the collection process and extract more money than consumers originally bargained for or expected to pay.

**A. Interpreting "permitted by law" to mean "permitted by any valid contract" is inconsistent with the text of Section 1692f(1).**

To "evaluate whether [an amount] was 'permitted by law,' it is necessary to determine which 'law' [the amount is] 'permitted by.'" *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). The district court, however, did not identify any "law" that "permitted" the collection of the pay-to-pay fees at issue here. Rather, the court appears to have held that the collection of such fees was "permitted by" general principles of contract law. This interpretation is inconsistent with Section 1692f(1)'s text in two ways. First, interpreting amounts "permitted by law" to include amounts permitted by any agreement that would be valid under state contract law renders superfluous Section 1692f(1)'s other prong allowing debt collectors to collect amounts "expressly" authorized by an "agreement creating the debt." Second, the district court's interpretation ignores Section 1692f(1)'s focus on the "*amount*" being "permitted by law." That is, Section 1692f(1) asks whether an "amount" is "permitted by law" and not, as the district court intimated, whether an agreement is permitted by law.

1. As this Court has previously recognized, "[u]nder accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *United Transp. Union v. BNSF Ry. Co.*, 710 F.3d 915, 928 (9th Cir. 2013) (quoting

*Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991)). The district court's interpretation runs afoul of this well-established canon in at least two ways.

First, interpreting "permitted by law" to include amounts authorized by *any* agreement that is valid under state contract law would render the "agreement creating the debt" clause superfluous, because an "agreement creating the debt" is, by definition, an agreement valid under state contract law. Thus, under the district court's interpretation, Section 1692f(1)'s "permitted by law" prong would already encompass amounts authorized by the "agreement creating the debt"—rendering that prong unnecessary.

Second, the district court's interpretation would render superfluous Section 1692f(1)'s requirement that amounts agreed to in the underlying contract be "expressly" authorized. After all, general principles of state contract law allow parties to agree to express or implied terms as part of any agreement. *See* Restatement (Second) of Contracts § 4 cmt. a (1981). So if general principles of contract law counted as a "law" that "permitted" the collection of amounts, debt collectors would be free to collect not only those amounts authorized by separate agreements, but also to collect amounts that are only implicitly authorized by the agreement creating the debt—rendering Section 1692f(1)'s "express" requirement meaningless.

Thus, the clause permitting debt collectors to collect amounts "expressly authorized by the agreement creating the debt" has independent effect only if "permitted by law" means affirmatively permitted by a particular law (whether state or federal), not just permitted under an agreement that is valid under state contract law.

2. Separately, the district court's interpretation ignores Section 1692f(1)'s focus on the "amount" being "permitted by law." *See Riddle*, 305 F.3d at 1118 ("The statute does not ask whether [the debt collector's] actions were permitted by law . . ., it asks whether the *amount* he sought to collect was permitted by law." (emphasis in original)). Here, the district court appears to have found Carrington's collection of pay-to-pay fees permissible because (1) they were authorized by a separate agreement between Carrington and the consumers and (2) those separate agreements were permitted by general principles of contract law. But, under Section 1692f(1), it is not enough for the agreement to be "permitted by law"; rather, the "amount" itself must be. Contract law standing alone does not provide for the collection of any specific amounts—and no principle of contract law says debt collectors may collect pay-to-pay fees. Thus, while it may have been permissible under contract law for Carrington to enter into separate agreements with consumers, contract law did not permit the "amount" at issue here. *Cf. Riddle*, 305 F.3d at 1118 (concluding that just because Rule 11 would authorize someone

to file suit to collect a statutory shoplifting fee on a dishonored check does not mean that collecting that fee was "permitted by law"). And, under the terms of Section 1692f(1), it is the "amount" that must be "permitted by law."

## B. An "amount" is "permitted by law" under Section 1692f(1) only if a law expressly authorizes it.

For these reasons, the district court's view that general principles of contract law satisfy Section 1692f(1)'s "permitted by law" prong is untenable. It is no surprise then that courts and regulators have long understood section 1692f(1)'s use of the phrase "permitted by law" to refer to amounts that a particular law affirmatively authorizes. This understanding of "permitted by law" allows that prong to sensibly coexist with the statute's reference to amounts that are "expressly authorized by the agreement creating the debt."

This understanding also accords with a common meaning of "permit"—"to consent to expressly or formally." Webster's Third New International Dictionary 1683 (1976). To be sure, the word "permit," when read in "isolation," may be "susceptible to more than one interpretation." *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 722 (9th Cir. 2003). The word "permit" can also mean "to acquiesce, by failure to prevent." *Rumsey Indian Rancheria of Wintun Indians v. Wilson*, 64 F.3d 1250, 1257 (9th Cir. 1994) (citing *United States v. Launder*, 743 F.2d 686, 689 (9th Cir. 1984)) (internal quotations omitted). But in "deciphering the meaning of a statute, [courts] do not look at its words in isolation"; rather, it is

necessary to look at the "specific context in which [those words are] used."

*Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1073 (9th Cir.

2016); *accord Artichoke Joe's*, 353 F.3d at 724 (looking to statutory context to

interpret provision addressing whether a state "permits [certain] gaming"). Here,

"permit" is used not in isolation but as part of the phrase "permitted by law." And

while in some contexts one may "permit" something by failing to prevent it, it is

far less natural to understand "permitted *by law*" to mean "permitted by the

absence of any law prohibiting it." The better reading is that "permitted by law"

means the law must affirmatively authorize the amount that the collector seeks to

collect.[4]

Indeed, this is how courts and regulators alike have traditionally understood

Section 1692f(1)'s "permitted by law" prong. For example, the Seventh and

Second Circuits have read that prong to refer to a law expressly or affirmatively

permitting a charge. *See*, *e.g.*, *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1111, 1112

(7th Cir. 2008) ("In order to be entitled to collect a fee, AFNI must show that the

---

[4] The alternative interpretation—that "permitted by law" means not prohibited by law—is inconsistent with the FDCPA's purposes. Congress passed the FDCPA in part because of the "lack of meaningful legislation on the State level." S. Rep. No. 95-382 at 2; *see also* 15 U.S.C. § 1692(b) ("[e]xisting laws and procedures . . . [were] inadequate to protect consumers"). Given the concern about the lack of existing protections, it is decidedly unlikely that Congress meant to allow debt collectors to collect any amounts not expressly authorized in the agreement creating the debt whenever state law simply did not prohibit the collection of those amounts.

fee is either authorized by the governing contract or that it is permitted by Wisconsin law. . . . Neither a *law expressly permitting* a collection fee . . . nor an agreement . . . exists here." (emphasis added)); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999) ("If state law neither *affirmatively permits* nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the [underlying] contract." (emphasis added)). Likewise, in 1988, the FTC, which had primary enforcement authority over the FDCPA before the creation of the Bureau, *see* 15 U.S.C. § 1692*l*(a) (2010), issued non-binding staff commentary stating the same. *See* Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988) (stating that a "debt collector may attempt to collect a fee or charge in addition to the debt if . . . the contract [creating the debt] is silent but the charge is otherwise expressly permitted by state law"; and, conversely, that "a debt collector may not collect an additional amount if . . . the contract does not provide for collection of the amount and state law is silent.").

### C. Allowing debt collectors to charge pay-to-pay fees absent express authorization is inconsistent with the FDCPA's purposes.

Understanding Section 1692f(1)'s "permitted by law" prong to require affirmative authorization is also more consistent with the FDCPA's purposes. Congress passed the FDCPA after finding that "debt collection abuse by third party debt collectors [was] a widespread and serious national problem," which it largely

attributed to a "lack of meaningful legislation on the State level." S. Rep. No. 95-382, at 2 (1977). The FDCPA was thus intended to rein in unethical debt collectors who had been "us[ing] . . . abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a), (e). Section 1692f(1), in particular, was designed to limit the amounts that debt collectors could try to collect from consumers—by ensuring that collectors would collect only those amounts that consumers had agreed to upfront, unless some law permitted them to impose additional charges later. By allowing debt collectors to collect pay-to-pay fees not expressly authorized by the agreement creating the debt or expressly authorized by law, the district court's interpretation runs afoul of the FDCPA's purposes in at least two ways.

1. First, the district court's interpretation would permit debt collectors to take advantage of consumers in debt by increasing consumers' costs beyond what they initially agreed to and expected to pay. When a consumer incurs a debt, she does not expect to have to pay a fee to make a payment by convenient method, unless, of course, the contract authorizes that fee or some other law expressly authorizes it. However, under the district court's interpretation, debt collectors can tack on these additional fees during the debt collection process and extract more money than consumers originally bargained to pay, at a point when consumers have no ability to shop around for a better deal.

While consumers may in some sense have a choice whether to pay these added "convenience fees," that choice may often be illusory. Consumers faced with debts in collection may feel compelled to choose the payment option that most quickly and reliably pays down their debts in order to avoid the myriad adverse consequences that can result from a delayed payment—such as accruing interest and late fees, continued adverse credit-reporting, or a potential lawsuit. As Congress recognized, consumers subject to debt collection are usually already facing "an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." S. Rep. No. 95-382, at 3. These consumers, already under stress, may not want to compound that stress and may want the peace of mind of using a payment method that they can immediately confirm went through—i.e., via a representative over the phone or a confirmation note online. Consumers may not want to chance paying by mail, which could get lost and would take more time to reach the debt collector. Thus, consumers may feel pressured to pay by means that are the fastest and most reliable—which come with a fee attached. This is particularly problematic because consumers cannot shop around for their debt collector, and therefore have no ability to choose a collector who offers convenient payment methods at lower or no cost.

Debt collectors, moreover, cannot defend pay-to-pay fees as charges necessary to enable them to offer convenient payment methods that consumers

want. The whole point of debt collection activity is to get consumers to pay debts. It is therefore in debt collectors' own interest to provide convenient methods for consumers to pay. Additionally, it is generally *cheaper* for collectors to accept payment by phone or online than to accept payment by mail (which is typically the fee-free option).[5] According to the Bureau's market understanding, whereas these pay-to-pay fees typically cost consumers between $4 and $12, debt collectors typically pay between $0.20 and $0.50 to process an online or phone payment. Plaintiffs' allegations here reflect that reality: Plaintiffs allege that Carrington charges its consumers $5 for online payments and $10 or $20 for payments over the phone, but that each such payment costs Carrington only $0.50.

By permitting pay-to-pay fees where neither the agreement creating the debt nor any law affirmatively authorizes such fees, the district court's interpretation would enable debt collectors to extract more money than consumers (who cannot choose their debt collector) originally bargained, or reasonably expected, to pay— contrary to Congress's goal of preventing debt collectors from taking advantage of consumers.

2. The district court's interpretation also removes an important check that Congress imposed on debt collectors' power and discretion: legislative

---

[5] This is one reason why it is unlikely that debt collectors would cease making online and phone payment options available if they could not charge extra for those payments.

authorization. Congress passed the FDCPA because "[e]xisting laws and procedures . . . [were] inadequate to protect consumers." 15 U.S.C. § 1692(b). Prior to the FDCPA, due to the lack of existing laws and procedures, including the "lack of meaningful legislation on the State level," S. Rep. No. 95-382 at 2, unethical debt collectors tried to collect whatever fees they saw fit to impose. Section 1692f(1) was designed to address that by limiting the collection of fees that consumers did not originally bargain for (i.e., in the agreement creating the debt) to situations where the fees are "permitted by law." In other words, Congress protected consumers by limiting the fees that debt collectors could choose on their own to try to collect: If a debt collector wants to collect an amount that the consumer did not agree to pay upfront, then some other law must affirmatively allow it.

Under the district court's interpretation, however, debt collectors and consumers revert to the power dynamic that existed before the FDCPA. In the absence of a law expressly authorizing additional fees or expressly prohibiting them, debt collectors get to choose which fees to try to collect and under what conditions. But it was this discretion and power that Congress sought to limit with Section 1692f(1).

## II. An "amount" does not need to be "incidental to the principal obligation" to be covered under Section 1692f(1).

The district court correctly held that whether the pay-to-pay fees are "incidental to the principal obligation" is irrelevant in determining whether such fees are covered by Section 1692f(1). That provision prohibits debt collectors from "collect[ing] . . . any amount (including any interest, fee, charge, or expense incidental to the principal obligation)" unless one of the two exceptions discussed above applies. Carrington argued below that its pay-to-pay fees did not violate Section 1692f(1) because the fees were not "incidental to the principal obligation"—i.e., the consumers' mortgages. Carrington is doubly mistaken. As the district court correctly held, Section 1692f(1)'s prohibition applies to any "amount," regardless of whether it is "incidental to the principal obligation." And, besides, pay-to-pay fees are "incidental to" the principal obligation.[6]

Section 1692f(1) prohibits the collection of "*any* amount" other than those expressly authorized by the underlying agreement or permitted by law—not just amounts that are "incidental to the principal obligation." (Emphasis added.) The "word 'any' has an expansive meaning, that is, 'one or some indiscriminately of

---

[6] Carrington also argued below that its pay-to-pay fees are not "debts" under the FDCPA. ER-102. But whether they are "debts" is irrelevant. Section 1692f(1) prohibits collectors from collecting unauthorized "amounts," not unauthorized "debts." Pay-to-pay fees are plainly "amounts" and therefore covered by Section 1692f(1).

whatever kind.'" *Ali v. Fed. Bur. of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997), in turn quoting Webster's Third New International Dictionary 97 (1976)). Thus, Congress's "use of 'any' to modify" the term amount "is most naturally read to mean [amounts] of whatever kind." *Id*. at 220.

Beyond that, Section 1692f(1) explicitly states that the "amounts" covered by the provision "*includ[e]* any interest, fee, charge, or expense incidental to the principal obligation." (Emphasis added.) As this Court has explained, "the word 'including' is ordinarily defined as a term of illustration, signifying that what follows is an example of the preceding principle." *Arizona State Bd. For Charter Schools v. Dep't. of Educ.*, 464 F.3d 1003, 1007 (9th Cir. 2006) (stating that this is the definition in "both legal and common usage") (citing *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941)). In other words, the term "including" does not signal an "all-embracing definition." *Bismarck Lumber*, 314 U.S. at 100. Here, that means that "interest, fee, charge or expense incidental to the principal obligation" are examples of "amount[s]," and not the *only* amounts that are covered. Pay-to-pay fees are therefore covered by Section 1692f(1) regardless of whether they are considered "incidental to the principal obligation."

In any event, even if Section 1692f(1) covered only those fees that are incidental to the principal obligation, pay-to-pay fees would be covered because

they are "incidental to" the relevant principal obligation. While the FDCPA does not define "incidental," it is ordinarily understood as "related to," Collins English Dictionary (12th ed. 2014), or "[s]ubordinate to something of greater importance," Black's Law Dictionary (11th ed. 2019). Pay-to-pay fees meet those definitions: They are "related to" the principal obligation because they are fees charged for paying the principal obligation. Indeed, if the principal obligation did not exist, then neither would the pay-to-pay fee. These fees are also generally minor in comparison to the outstanding debt and are therefore "subordinate to" the principal obligation.

A minority of courts have incorrectly held that pay-to-pay fees are not "incidental" to the principal obligation because such fees are optional. *See Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-cv-04303, 2020 WL 1904596, at *2 (N.D. Cal. Apr. 17, 2020) (stating that "most courts have rejected" the conclusion that Section 1692f(1) requires the fees at issue to be incidental to the principal obligation). But the statute does not make an exception for optional amounts, and regardless, pay-to-pay fees are still "related" and "subordinate" to the underlying mortgage debt, and thus "incidental" to the principal obligation.

Perhaps courts have read "incidental" narrowly out of a concern that Section 1692f(1) would otherwise reach debt collectors attempting to collect amounts wholly unrelated to the underlying debt and thereby prevent debt collectors from

engaging with consumers in truly separate transactions. But that is not the case, and courts do not need to avoid Section 1692f(1)'s plain meaning to find a limiting principle. Section 1692f(1) is an example of an "unfair or unconscionable *means to collect or attempt to collect a[] debt*." 15 U.S.C. § 1692f (emphasis added). Thus, if a debt collector is not trying to collect a debt covered by the FDCPA, Section 1692f(1)'s prohibition does not apply.

## III. The Bureau's interpretation of Section 1692f(1) warrants *Skidmore* deference.

For the reasons set forth above, the text and purpose of Section 1692f(1) demonstrate that the provision's "permitted by law" prong is satisfied only where a law expressly or affirmatively authorizes the fee at issue. Similarly, the provision's text shows that a fee does not need to be "incidental to the principal obligation" to be a covered "amount." To the extent that the Court is left with any doubt, however, it should defer to the views of the Bureau, which is charged with implementing and enforcing the FDCPA. *See Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 563, 563 n.7 (9th Cir. 2002) (giving "great weight to any reasonable construction of a regulatory statute adopted by the agency charged with its enforcement," including where that interpretation is conveyed in an amicus brief).

In particular, the Bureau's position is entitled to *Skidmore* deference. *Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1092-93 (9th Cir. 2014) (applying

*Skidmore* deference to the agency's interpretation of statute expressed in amicus

brief). Under *Skidmore*, courts should give "weight" to an agency's interpretation

commensurate with "the thoroughness evident in [the agency's] consideration, the

validity of its reasoning, its consistency with earlier and later pronouncements, and

all those factors which give it power to persuade." *Skidmore v. Swift & Co.*, 323

U.S. 134, 140 (1944).

Congress vested authority for administering the FDCPA in the CFPB, which

is empowered not only to enforce the Act, but also to promulgate regulations and

to issue advisory opinions. 15 U.S.C. §§ 1692k(e), 1692*l*(b)(6), (d); *see also* 12

U.S.C. § 5512(b)(4)(B) (addressing deference due to CFPB interpretations of

federal consumer financial law). With respect to Section 1692f(1), the Bureau has

previously publicly summarized its staff's findings that the provision's "permitted

by law" prong requires express authorization, first in 2014, then in 2015, and again

in 2017. *See* CFPB: Fall 2014 Supervisory Highlights, at 7 (noting that Bureau

examiners found that a debt collector violated Section 1692f(1) by imposing pay-

to-pay fees "where the law was silent regarding the collection of fees"); CFPB:

Fall 2015 Supervisory Highlights, at 20-21 (similar); 82 Fed. Reg. at 35938

(explaining that Bureau examiners had advised collectors that it would violate

Section 1692f(1) to collect pay-by-phone fees unless "*expressly* authorized by

contract or state law" (emphasis added)). This is consistent with the views

expressed in the FTC's staff commentary on the FDCPA, issued more than 30 years ago. *See* 53 Fed. Reg. at 50108 (stating that a "debt collector may attempt to collect a fee or charge in addition to the debt if . . . the contract [creating the debt] is silent but the charge is otherwise expressly permitted by state law"; and, conversely, that "a debt collector may not collect an additional amount if . . . the contract does not provide for collection of the amount and state law is silent.").

Given these previous statements, as well as the Bureau's authority over the FDCPA and the reasoning set forth in this brief, the Bureau's interpretations of Section 1692f(1)'s "permitted by law" and "amount" are entitled to *Skidmore* deference. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399, 401–02 (2008) (affording *Skidmore* deference to the EEOC's interpretative position, which had been "embodied in its compliance manual and internal directives" for "at least five years").

## CONCLUSION

For the foregoing reasons, the Court should hold that an amount is "permitted by law" for purposes of Section 1692f(1) only if a law expressly or affirmatively authorizes debt collectors to collect that amount. Further, the Court should hold that Section 1692f(1) prohibits collection of "any amount" not authorized by the

underlying agreement or permitted by law, regardless of whether that amount is "incidental to the principal obligation."

Respectfully submitted,

October 21, 2021

s/ Joseph Frisone

Stephen Van Meter
  *Acting General Counsel*
Steven Y. Bressler
  *Acting Deputy General Counsel*
Kristin Bateman
  *Acting Assistant General Counsel*
Joseph Frisone
  *Counsel*
Consumer Financial Protection
Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9287 (telephone)
(202) 435-7024 (facsimile)
Joseph.Frisone@cfpb.gov

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(f), this brief contains 6863 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 and 14-point Times New Roman font.

October 21, 2021                     s/ Joseph Frisone

Joseph Frisone
Counsel
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9287 (telephone)
Joseph.Frisone@cfpb.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2021, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the

Ninth Circuit by using the appellate CM/ECF system. The participants in the case

are registered CM/ECF users and service will be accomplished by the appellate

CM/ECF system.


October 21, 2021                     s/ Joseph Frisone

                                     Joseph Frisone
                                     Counsel
                                     Consumer Financial Protection Bureau
                                     1700 G Street, NW
                                     Washington, D.C. 20552
                                     (202) 435-9287 (telephone)
                                     Joseph.Frisone@cfpb.gov