CASE NO. 21-55459

# United States Court of Appeals
## FOR THE NINTH CIRCUIT

———————

AMY THOMAS-LAWSON; BRENDA BOLEY; MIGUEL PADILLA; WILLIAM GREEN,
on behalf of themselves and all those similarly situated,

*Plaintiffs-Appellants*,

v.

CARRINGTON MORTGAGE SERVICES, LLC,

*Defendant-Appellee.*

———————

On Appeal from the United States District Court
for the Central District of California
No. 20-cv-7301 (The Hon. Otis D. Wright, II)

———————

## DEFENDANT-APPELLEE'S ANSWERING BRIEF

———————

**BUCKLEY LLP**
Fredrick S. Levin
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
(310) 424-3984
flevin@buckleyfirm.com

Scott T. Sakiyama
Matthew D. Skiba
353 N. Clark Street, Suite 3600
Chicago, IL 60654
(312) 924-9800
ssakiyama@buckleyfirm.com
mskiba@buckleyfirm.com

Brian W. Bartholomay
Sarah B. Meehan
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 349-8000
bbartholomay@buckleyfirm.com
smeehan@buckleyfirm.com

*Counsel for Appellee Carrington Mortgage Services, LLC*

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Carrington Mortgage Services, LLC states as follows:

1.     Carrington Mortgage Services, LLC is a Delaware limited liability company.  Carrington Mortgage Services, LLC's members are Carrington Holding Company, LLC and Carrington Investment Partners, L.P.  Carrington Holding Company, LLC is a Delaware limited liability company, whose sole member is The Carrington Companies, LLC.  Carrington Investment Partners, L.P. is a Delaware limited partnership, whose general partner is Carrington Capital Management, LLC. Carrington Capital Management, LLC is a Delaware limited liability company, whose members are Carrington Holding Company, LLC and a private individual. The Carrington Companies, LLC is a Delaware limited liability company.  There are no publicly held corporations holding stock in the amount of 10% or more in The Carrington Companies, LLC.

2.     No publicly held corporation owns 10% or more of Carrington Mortgage Services, LLC's stock.

Dated: February 14, 2022          By: */s/ Fredrick S. Levin*
                                  Fredrick S. Levin

# TABLE OF CONTENTS

DISCLOSURE STATEMENT .................................................................. ii

TABLE OF CONTENTS.......................................................................... iii

TABLE OF AUTHORITIES ................................................................. vi

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION.........................................................5

STATEMENT OF THE ISSUES..............................................................5

STATEMENT OF THE CASE.................................................................6

ARGUMENT ..........................................................................................9

    I.  The District Court Properly Dismissed the FDCPA Claims. .........................9

        A. Section 1692f(1) Sets Out Two Alternative Paths for Collection of a Fee in Compliance With the FDCPA. ....................................................10

        B. Plaintiffs' Valid and Enforceable Payment Services Contracts Are Permitted by Well-Settled State Contract Law. ...........................................13

        C. Plaintiffs' Valid and Enforceable Payment Services Contracts Satisfy the "Permitted by Law" Clause of § 1692f(1)...................................................15

            1.Plaintiffs' Interpretation Rewrites the FDCPA and Should Be Rejected. ............................................................................................15

                i. Plaintiffs' Interpretation Improperly Replaces "Law" With "Statute." ...........................................................................................16

                ii. Plaintiffs' Interpretation Improperly Replaces "Permitted" with "Expressly Authorized.".................................................................21

            2.Plaintiffs Improperly Resort to Maxims of Construction to Alter the Plain Language of the FDCPA................................................................23

i. Section 1692f(1)'s "Authorized by the Agreement" Clause Is Not Rendered Superfluous by Carrington's Plain Language Interpretation of "Permitted By Law."................................24

ii. Plaintiffs' Reliance on the Series-Qualifier Canon Is Misplaced. ...................................................................27

iii. Plaintiffs' Policy and Legislative History Arguments Do Not Warrant Reversal.................................................28

3. The Interpretations in the FTC Commentary and CFPB Compliance Bulletin Are Contrary to the Plain Language of § 1692f(1) and Are Not Entitled to Weight.................................................................31

D. Carrington's Convenience Fees Are Not Incidental to the Mortgage Debt.................................................................35

1. Section 1692f(1) Requires a Showing That the Fees Are Incidental to the Mortgage Debt But Carrington's Convenience Fees Arise From Plaintiffs' Affirmative Actions, Not From the Mortgage Debt................35

2. Plaintiffs' Limitless Reading of "Incidental" Is Contrary to the FDCPA and Demonstrates That Carrington's Convenience Fees Are Not Actionable.................................................................40

E. The Complaint Fails to Plead Plausibly That Carrington Is a Debt Collector Under the FDCPA.................................................45

II. There Are No Alternative Grounds for Reversal. ........................46

A. Plaintiffs Have Abandoned Any Argument Regarding the State Law Claims, and Therefore, the State Law Claims Do Not Warrant Reversal.....46

B. Plaintiffs' Arguments Concerning the Affirmative Defense Are Irrelevant and Lack Merit. ................................................49

C. Nothing in the CFPB's Amicus Brief Warrants Reversal. ...............51

CONCLUSION.................................................................53

STATEMENT REQUESTING ORAL ARGUMENT ...........................54

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH
LIMITATIONS ........................................................................................55

CERTIFICATE OF SERVICE ................................................................56

**Page(s)**

**Cases**

*Alexander v. Carrington Mortg. Servs., LLC*,
No. 20-2359, 2022 WL 164018 (4th Cir. Jan. 19, 2022) ...........................*passim*

*Anne Arundel Cnty. v. Hartford Acc. & Indem. Co.*,
621 A.2d 427 (Md. 1993) ..................................................................................14

*Artichoke Joe's Cal. Grand Casino v. Norton*,
353 F.3d 712 (9th Cir. 2003) ............................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................5

*Bardak v. Ocwen Loan Servicing, LLC*,
No. 8:19-cv-1111-24TGW, 2020 WL 5104523 (M.D. Fla. Aug. 12,
2020) ..................................................................................................................39

*Benedict v. CACH, LLC*,
No. 12CV1072 AJB (DHB), 2012 WL 5382255 (S.D. Cal. Nov. 1,
2012) ..................................................................................................................51

*In re Brosnhahan*,
312 B.R. 220 (Bankr. W.D.N.Y. 2004) .......................................................12, 25

*Estate of Campbell v. Ocwen Loan Servicing, LLC*,
467 F. Supp. 3d 1262 (S.D. Fla. 2020) .............................................................39

*Chappell v. Robbins*,
73 F.3d 918 (9th Cir. 1996) ..............................................................................20

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992).....................................................................................16, 17

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ............................................................................8

*CVS Health Corp. v. Vividus, LLC*,
   878 F.3d 703 (9th Cir. 2017) ........................................................24

*DKS, Inc. v. Corp. Business Sols., Inc.*,
   675 F. App'x 738 (9th Cir. 2017) ..................................................19

*Flores v. Collection Consultants of Cal.*,
   No. SA CV 14-0771-DOC, 2015 WL 4254032 (C.D. Cal. Mar. 20,
   2015) .................................................................................39, 40, 43

*Fox v. Citicorp Credit Servs., Inc.*,
   15 F.3d 1507 (9th Cir. 1994) ........................................................32

*Garbutt v. Ocwen Loan Servicing, LLC*,
   No. 8:20-cv-136-T-36JSS, 2020 WL 5641999 (M.D. Fla. Sept. 22,
   2020) ..............................................................................................39

*Heintz v. Jenkins*,
   514 U.S. 291 (1995)......................................................................32

*Henson v. Santander Consumer USA, Inc.*,
   137 S. Ct. 1718 (2017)..................................................................21

*Hernandez v. Williams, Zinman & Parham PC*,
   829 F.3d 1068 (9th Cir. 2016) ......................................................35

*James v. City of Costa Mesa*,
   700 F.3d 394 (9th Cir. 2012) ........................................................36

*Johnson v. Johnson*,
   306 S.W.2d 780 (Tex. Civ. App. 1957)..........................................14

*Kelly v. Ocwen Loan Servicing, LLC*,
   No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31,
   2020) ..............................................................................................39

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................8

*In re Lane*,
No. 06-23879-ELP7, 2007 WL 1723502 (Bankr. D. Or. June 11,
2007) ...................................................................................................12, 25

*Leszanczuk v. Carrington Mortg. Servs., LLC*,
21 F.4th 933 (7th Cir. 2021) ...............................................................49

*Lish v. Amerihome Mortg. Co., LLC*,
No. 2:20-cv-07147-JWW-JRPx, 2020 WL 6688597 (C.D. Cal.
Nov. 10, 2020) .........................................................................39, 40, 43

*Livingston v. Green Props., Inc.*,
160 A.2d 594 (Md. 1960) ....................................................................14

*Long v. Teachers' Ret. Sys. of Ill.*,
585 F.3d 344 (7th Cir. 2009) ...............................................................48

*Mannello v. Residential Credit Sols., Inc.*,
No. 2:15-cv-07674-CAS-AJW, 2016 WL 94236 (C.D. Cal. Jan. 7,
2016) .....................................................................................................45

*MB Fin. Grp., Inc. v. U.S. Postal Serv.*,
545 F.3d 814 (9th Cir. 2008) ...............................................................13

*Molino v. Sagamore*,
105 A.D.3d 922 (N.Y. App. Div. 2013) ..............................................14

*Moran v. Screening Pros, LLC*,
943 F.3d 1175 (9th Cir. 2019) .............................................................52

*Murphy v. HSBC Bank USA*,
No. H-12-3278, 2017 WL 393595 (S.D. Tex. Jan. 30, 2017) ............11

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
499 U.S. 117 (1991)..............................................................14, 17, 20

*O'Bryne v. Portfolio Recovery Assocs., LLC*,
596 F. App'x 565 (9th Cir. 2015) .......................................................26

*Ontario, Inc. v. Samsung C & T Corp.*,
103 N.E.3d 774 (N.Y. 2018)................................................................14

*Orr v. Plumb*,
884 F.3d 923 (9th Cir. 2018) ............................................................. 13

*Parsons v. Ryan*,
949 F.3d 443 (9th Cir. 2020), *cert. denied sub nom. Shinn v. Jensen*, 141 S. Ct. 1054 (2021) ....................................................... 48

*R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*,
857 A.2d 1 (Md. 2004) ...................................................................... 22

*Reid v. Ocwen Loan Servicing, LLC*,
No. 20-cv-80130-SINGHAL, 2020 WL 5104539 (S.D. Fla. May 4, 2020) .................................................................................................. 40

*Reynoso v. Giurbino*,
462 F.3d 1099 (9th Cir. 2006) ........................................................... 47

*Rota-McLarty v. Santander Consumer USA, Inc.*,
700 F.3d 690 (4th Cir. 2012) ............................................................. 35

*S.E.C. v. McCarthy*,
322 F.3d 650 (9th Cir. 2003) ........................................................ 21, 22

*S.E.C. v. Washington Inv. Network*,
475 F.3d 392 (D.C. Cir. 2007) ........................................................... 22

*Sanchez v. United States*,
341 F.2d 225 (9th Cir. 1965) ............................................................. 30

*Scalia v. Dep't of Transp. & Pub. Facilities*,
985 F.3d 742 (9th Cir. 2021) ............................................................. 52

*Sheehan v. Atlanta Intl. Ins. Co.*,
812 F.2d 465 (9th Cir. 1987) ............................................................. 14

*Shields Limited P'ship v. Bradberry*,
526 S.W.3d 471 (Tex. 2017) .............................................................. 14

*Shula v. Lawent*,
359 F.3d 489 (7th Cir. 2004) ................................................... 36, 42, 43

*Taylor v. United States*,
   207 U.S. 120 (1907)........................................................22

*Tibble v. Edison Int'l*,
   843 F.3d 1187 (9th Cir. 2016) ...............................13, 49

*Torres v. Lynch*,
   578 U.S. 452 (2016)........................................................38

*Turner v. PHH Mortg. Corp.*,
   467 F. Supp. 3d 1244 (M.D. Fla. 2020)........................39

*U.S. for Use & Benefit of Miller & Bentley Equip. Co. v. Kelley*,
   327 F.2d 590 (9th Cir. 1964) .........................................25

*United States v. Carpenter*,
   816 F. App'x 159 (9th Cir. 2009) ............................30, 31

*United States v. Casasola*,
   670 F.3d 1023 (9th Cir. 2012) .......................................52

*United States v. Collazzo*,
   984 F.3d 1308 (9th Cir. 2021) ................................24, 28

*United States v. Gallegos*,
   613 F.3d 1211 (9th Cir. 2010) .......................10, 27, 28

*United States v. Leed*,
   981 F.2d 202 (5th Cir. 1993) .........................................35

*United States v. Mead Corp.*,
   533 U.S. 218 (2001)........................................................52

*United States v. Nishiie*,
   996 F.3d 1013 (9th Cir. 2021) .......................................27

*United States v. Williams*,
   659 F.3d 1223 (9th Cir. 2011) .......................................16

*Van Der Valk v. Shell Oil Co.*,
   233 F. App'x 752 (9th Cir. 2007) ............................13, 14

*Vien-Phuong Thi Ho v. ReconTrust Co., NA*,
858 F.3d 568 (9th Cir. 2017) ...............................................................52

*Widjaja v. J.P. Morgan Chase Bank, N.A.*,
21 F.4th 579 (9th Cir. 2021) ...............................................................51

*Zion v. Cnty. of Orange*,
874 F.3d 1072 (9th Cir. 2017) ...........................................................47

*Zizlsperger v. Maxwell & Morgan PC*,
565 F. App'x 633 (9th Cir. 2014) ........................................................51

**Statutes**

15 U.S.C. § 1604 .......................................................................... 11, 12

15 U.S.C. § 1692a. ............................................................................. 4

15 U.S.C. § 1692e. ............................................................................19

15 U.S.C. § 1692f ......................................................................*passim*

Cal. Civ. Code § 1788.13 ..................................................................18

Cal. Civ. Code § 1788.14 ..................................................................18

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation
of Legal Texts* (1st ed. 2012).........................................................27, 37

CFPB: Fall 2015 Supervisory Highlights,
https://files.consumerfinance.gov/f/201510_cfpb_supervisory-
highlights.pdf ...................................................................................32

CFPB Compliance Bulletin 2017-01,
82 Fed. Reg. 35,936 (2017) ..........................................................31, 32

Debt Collection Practices Act, H.R. 5294, 95th Cong. (1977)................29

*Fair Debt Collection Practices Act: Hearings before the Subcomm. on Consumer Affairs of the Senate Comm. on Banking, Housing, and Urban Affairs on S. 656, S. 918, S. 1130 & H.R. 5294,* 95th Cong. (1977) ........................................................................................29, 33

Fair Debt Collection Practices Act, S. 656, 95th Cong. (1977) .............................29

Fair Debt Collection Practices Act, S. 918, 95th Cong. (1977) .................22, 23, 29

Fair Debt Collection Practices Act, S. 1130, 95th Cong. (1977) ...........................29

Fed. R. App. P. 28 ........................................................................................48, 49

Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097 (Dec. 13, 1988) ...........................................................31, 32

*Incidental*, *Oxford English Dictionary* (2d ed. 1989), https://www.oed.com/oed2/00114231 ................................................................37

*Incidental*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/incidental (last visited Feb. 11, 2022) ......................................................................................37

*Law*, *Black's Law Dictionary* (11th ed. 2019).........................................................11

S. Rep. No. 95-382 (1977) ........................................................................................29

# INTRODUCTION

This appeal raises as its primary question whether Defendant-Appellee Carrington Mortgage Services, LLC's ("Carrington") agreements with Plaintiffs-Appellants ("Plaintiffs") for the convenience of online or telephonic payment services, validly entered into under the law of each Plaintiff's home state, fall within the "permitted by law" clause of 15 U.S.C. § 1692f(1) of the federal Fair Debt Collections Practice Act ("FDCPA"). It is undisputed that for each fee collected, Plaintiffs freely entered into an enforceable contract to pay the fee for the service. It is also undisputed that at the time Plaintiffs agreed to the fee, they had no preexisting right to use the payment service under their respective loan agreements. Rather, their multi-year mortgage agreements, entered into eight to ten years prior to the collection of the first fees in question, required Plaintiffs to deliver their payments to a physical address.

In the District Court, Plaintiffs argued that § 1692f(1) bars a subsequent agreement whereby a borrower could contract for the legal right to the online or telephonic payment service in exchange for a fee. In effect, Plaintiffs argue that Carrington, a loan servicer, may choose to provide these payment services or not, but, if it chooses to provide the services, it must do so for free.

As the District Court held, nothing in the text or structure of § 1692f(1) commands this result. Section 1692f(1), in relevant part, prohibits the "collection of

1

any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  The District Court found Plaintiffs' reading of § 1692f(1) "circular" and "illogical" because the plain text of § 1692f(1) allows fees that are "permitted by law," in addition to fees "authorized by the agreement creating the debt."  ER-34.  As demonstrated below, the District Court is correct.

Where § 1692f(1) speaks of an "amount . . . permitted by law," Plaintiffs insist it applies only to fees *expressly authorized by statute*, thereby excluding contractual agreements as a source of legal permission.  But that reading is atextual.  It ignores that Congress requires "express authorization" in the first clause of § 1692f(1) but uses "permitted" in the second.  The District Court's judgment rightly gives effect to clear differences in the language chosen by Congress.  Moreover, Plaintiffs' insistence that "law" includes only statutory law runs contrary to what has long been considered the law in the United States; indeed, it all but ignores the well-known common law foundation of American law, including its traditional notion of freedom of contract.  If Congress wished to limit "permitted by law" to only express statutory enactments, it knew how to do so.  That should end the matter; the Court should read § 1692f(1) as it was written rather than as Congress *could* have written it.

Indeed, the drafting history of § 1692f(1) demonstrates that Congress considered and rejected the "expressly authorized by law" language that Plaintiffs proffer as the only correct interpretation. Nor should the Court lightly presume, as Plaintiffs contend, that Congress enacted a broad prohibition of freedom of contract absent unequivocal language that is not present here. This is particularly so because the legislative history also suggests that "permitted by law" was understood to include amounts agreed to by contract. This Court should affirm the judgment of the District Court because it correctly determined that a fee agreed to under a valid state law contract falls within § 1692f(1)'s "permitted by law" clause.

The Court may also affirm the judgment dismissing the FDCPA claims for two additional reasons. *First*, for § 1692f(1) to apply at all to the convenience fees at issue, they must be "incidental" to Plaintiffs' underlying principal obligation, i.e., their mortgage debt. The District Court disagreed with Carrington on this point, but there is a split of authority on it, notably among the Seventh and Fourth Circuits and, additionally, among a multitude of district courts around the country. As set forth below, the better reading is that for the fee to be subject to § 1692f(1), it must be an "incident" of the "principal obligation." As used in § 1692f(1), "incidental" cannot be understood to merely require any conceivable connection—no matter how tenuous—to the underlying mortgage debt. The fees must arise as a "consequence" of the "principal obligation" to qualify as "incidental." As matter of law, that

connection is wanting because the convenience fees at issue arise from Plaintiffs' choice to accept Carrington's offer to provide online or telephonic payment services. Further, the complaint does not (and cannot) allege that Carrington ever asserted that Plaintiffs must use those payment services to make their mortgage payments or claimed entitlement to the fee for those services as of right or because of the mortgage debt. To the contrary, Plaintiffs' use of online or telephonic payment methods was optional and Plaintiffs' monthly mortgage payments were accepted and credited appropriately regardless of how they chose to make their payment. Convenience fees thus stand apart from nearly all other types of fees contested in FDCPA litigation because, in nearly all other cases, the debt collector claims entitlement to the fee as a matter of right because of the loan debt and offers the borrower nothing for the fee in exchange.

*Second*, Plaintiffs failed to plausibly plead a threshold element of FDCPA liability, namely, that Carrington was a "debt collector" at the time it collected the fees. Carrington did not originate Plaintiffs' loans; it is their loan servicer. Therefore, Carrington is only subject to the FDCPA with respect to each Plaintiff if his or her loan was in "default at the time it was obtained" by Carrington. 15 U.S.C. § 1692a(6)(f)(3). The District Court applied an assumption of truth to Plaintiffs' bare allegations that their loans were "in default at the time" the debt was assigned to Carrington. *Id.*; ER-30. Such "formulaic recitation of the elements of a cause of

action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Plaintiffs have failed to plead a plausible claim that Carrington was a "debt collector" under the FDCPA, which alone is sufficient to sustain the District Court's judgment dismissing Plaintiffs' FDCPA claim.

## STATEMENT OF JURISDICTION

Carrington agrees with the jurisdictional statement set forth in Plaintiffs' Opening Brief (OB 9).[1]

## STATEMENT OF THE ISSUES

The issues before the Court are as follows:

1.     Whether Carrington's collection of a fee from Plaintiffs to provide an online or telephonic payment service falls within the "permitted by law" clause of § 1692f(1) where Plaintiffs freely entered into enforceable contracts with Carrington to pay the fee for the service;

2.     Whether it is an element of liability under § 1692f(1) that the fee collected by Carrington was "incidental to the principal obligation," and, if so, whether the fee collected by Carrington for online and telephonic payment services satisfied this element where the record is undisputed that Carrington did not require Plaintiffs to use these payment services to satisfy their monthly mortgage obligation, that the fee was agreed to in a separate contract entered into years after the original

_____

[1] Citations to Plaintiffs' Opening Brief shall appear as "OB."

mortgage obligation, and where Carrington never asserted that it was entitled to the fee as of right or because of the mortgage debt;

3. Whether Plaintiffs failed to plausibly allege that Carrington qualified as a "debt collector" within the meaning of the FDCPA where Plaintiffs asserted only conclusory allegations that each of the named Plaintiffs' loans was in default.

**STATEMENT OF THE CASE**

*Facts Pertaining to Plaintiffs' Mortgages*

On October 24, 2007, Plaintiff Amy Thomas-Lawson entered into a Deed of Trust and executed a Note evidencing a loan secured by property in Maryland. ER-198, 239 ¶ 9. On February 2, 2009, Plaintiff William Green entered into a Mortgage and executed a Note secured by real property in New York. ER-239 ¶ 10, 246 ¶ 62. On November 20, 2007, Plaintiff Brenda Boley entered into a Deed of Trust and executed a Note secured by real property in Texas. ER-239 ¶ 11, 248 ¶ 74. On December 10, 2009, Plaintiff Miguel Padilla entered into a Deed of Trust and executed a Note secured by real property in California. ER-239 ¶ 12, 250 ¶ 89. All Plaintiffs allege Carrington was assigned their Deeds of Trust. ER-245 ¶ 48, 247 ¶ 63, 248 ¶ 75, 250 ¶ 90. Each Plaintiffs' Note contains a requirement that "[p]ayment shall be made" at a specified post office box. ER-210 ¶ 4(B), 216 ¶ 4(B), 221 ¶ 4(B), 226 ¶ 4(B). None require Carrington to accept payment via any other method. *Id.*

***Facts Pertaining to Plaintiffs' Online and Phone Payments***

Though not required to, Carrington nonetheless offered Plaintiffs the option to make mortgage payments online and over the phone. One-time online payments are processed through Speedpay, a payment processing system created and maintained by a service provider. ER-136 ¶ 4. Plaintiffs Thomas-Lawson, Padilla, and Boley allege that from 2017 to 2019, they made online payments to Carrington, each time incurring a convenience fee. ER-245 ¶ 51, 249 ¶ 79, 250 ¶ 91.

Each time Plaintiffs chose to make an online payment, they were presented with the existence and amount of the convenience fee before they confirmed their intent to continue. ER-137–38 ¶¶ 7, 8, 146, 152–54. Specifically, Plaintiffs chose either the "ONE-TIME PAYMENT" or "MAKE A PAYMENT" option to begin the transaction process and were then presented with the "Online Payment Details" of the proposed transactions, including a statement that "[t]here is a $5 convenience fee when making one-time payment online." ER-137–39 ¶¶ 7, 8, 146, 152–55. Plaintiffs then selected a "MAKE A PAYMENT" button, where they were presented with applicable terms and conditions. ER-137–39 ¶¶ 7, 8, 147, 155. After reviewing the terms and conditions, Plaintiffs selected an "I AGREE" button in order to agree to the terms and conditions and move forward with the online payment process. *Id*. Plaintiffs then manually entered the amount of the mortgage payment they wished to pay and their banking information into an interactive webpage, which displayed

the amount of the convenience fee next to a statement that "[t]here is a $5.00 Convenience Fee for this service." ER-137–39 ¶¶ 7, 8; ER-148, 156. Plaintiffs completed the transaction by selecting "Continue." ER-137–39 ¶¶ 7, 8, 148, 156.[2]

Plaintiff Green alleges that he was charged a convenience fee when he made a payment over the phone in November 2019. ER-239 ¶ 10. Green called Carrington and verified his identity using the last four digits of his social security number. ER-231. Green stated he wished to make the payment due in September 2019 and Carrington informed him of the amount due for that month. ER-232. Carrington also informed him of the $20 fee. ER-235. Carrington then confirmed with Green as follows: "[T]o confirm, you authorize Carrington Mortgage to debit your checking account on November 13, 2019, for the amount of $1,356.52, which includes a $20 convenience fee. . . . Do we have your permission to complete the transaction?" *Id.* Mr. Green responded, "Yes," at which point Carrington submitted the payment and provided Green with a confirmation number for the payment. *Id.*[3]

---

[2] For transactions beginning in September 2019, the process differed slightly but in a non-material way with respect to disclosure of the convenience fee and acceptance of the terms of the clickwrap agreement. ER-139–40 ¶ 10, 164–66, 169–71.

[3] These agreements were properly before the District Court under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (considering webpages surrounding relevant content where plaintiffs "do not dispute [defendant's] contention that a viewer accessing the [content] must also access the surrounding pages on the [] website, nor do they dispute the authenticity"); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (considering a separate agreement that was not explicitly referred to in the complaint where claim depended on the lawful "authorization" found in the separate agreement).

*Procedural History and Rulings on Review*

Plaintiffs filed a complaint against Carrington purporting to state claims under the FDCPA, the Maryland, Texas, and California debt-collection and consumer-protection laws, and for breach of contract under New York, Maryland, Texas, and California state law. ER-29, 237. Carrington filed a Motion to Dismiss on October 9, 2020 (the "Motion"), seeking dismissal with prejudice of the complaint for failure to state a claim. ER-93. Plaintiffs opposed the Motion (ER-55), and on April 5, 2021, the District Court issued an Order granting Carrington's Motion and dismissing each of Plaintiffs' claims with prejudice. ER-24. In granting the Motion, the District Court found that Plaintiffs "fail[ed] to allege any cognizable legal theory showing that *these* [convenience] fees violate the FDCPA." ER-35 (emphasis in original). The District Court rejected Plaintiffs' state law claims (including claims based on breach of contract and under analogous state debt collection statutes) for failure to state a claim, noting Plaintiffs' concession that these claims rose or fell with the FDCPA claim. ER-34–35 (citing ER-73).

## ARGUMENT

### I. The District Court Properly Dismissed the FDCPA Claims.

The District Court properly rejected Plaintiffs' FDCPA claims for failure to state a claim. First, the convenience fees fit within the plain meaning of "permitted by law" since Plaintiffs affirmatively entered into separate contracts with Carrington

vesting Plaintiffs with the legal right to online or telephonic payment services that they did not otherwise have in exchange for a fee for those services. Second, § 1692f(1) requires a showing that the fees are "incidental" to the mortgage debt and the convenience fees do not meet that requirement. Third, Plaintiffs' conclusory allegations that Carrington acted as a "debt collector" under the FDCPA fail to plausibly plead the threshold requirement.

### A. Section 1692f(1) Sets Out Two Alternative Paths for Collection of a Fee in Compliance With the FDCPA.

Section 1692f(1) of the FDCPA prohibits a debt collector from collecting a charge or fee "unless such amount is expressly authorized by the agreement creating the debt _or_ permitted by law." (emphasis added). This language creates two alternative paths for collecting a fee without liability: (i) under the first clause, when "expressly authorized by the agreement creating the debt" "or" (ii) under the second clause, when "permitted by law." _United States v. Gallegos_, 613 F.3d 1211, 1215 (9th Cir. 2010) (describing that the Court has "consistently defined 'or' as indicating separate alternatives").

The first clause provides a debt collector certainty that the fee may be collected without FDCPA liability. If the fee is expressly authorized in the agreement creating the debt, the debt collector may, without risk of § 1692f(1) liability, collect it without consulting other federal or state law.

The second clause provides a separate path to compliance—a debt collector may also collect a fee without § 1692f(1) liability if collection of the fee is "permitted by law." Unlike the first clause, the path to § 1692f(1) compliance under this second clause requires a debt collector to take account of broader sources of authority: the "law." More specifically, it must weigh "the aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action." *Law*, *Black's Law Dictionary* (11th ed. 2019) (other definitions include, "a statute" and "common law"). In other words, to collect fees without risk of § 1692f(1) liability for charges that are not set forth in the initial agreement, the FDCPA requires a debt collector to consult the law in each of the jurisdictions where it seeks to charge the fee and may only avoid § 1692f(1) liability if the fee is "permitted by" such law.

That Congress provides these two alternative measures of compliance does not render each without independent effect. Rather, by setting out two alternatives paths using the disjunctive "or," the language chosen by Congress suggests that the two clauses are to operate independently, with neither providing the *exclusive* method of compliance.[4] *See Murphy v. HSBC Bank USA*, No. H-12-3278, 2017 WL

---

[4] For example, in the context of the Truth in Lending Act, Congress provides an option for compliance with disclosure requirements, using a model form, as well as a broader alternative method, using an adjusted form that must meet additional criteria. 15 U.S.C. § 1604(b) (providing that regulated parties "shall be deemed to be in compliance" if they use "any appropriate model form" as published by the

393595, at *19 (S.D. Tex. Jan. 30, 2017) (recognizing that statutory procedure for compliance "simply offers one method, not an exclusive one" for complying with the statute where language does not "prohibit" preexisting alternative methods of compliance).  Thus, the FDCPA does not mandate that fees *must* be included in the initial agreement creating the debt, or else the fee cannot be collected.  It provides for a second alternative where a fee is not expressly set forth in the initial agreement—when fees are "permitted by law" under the second clause.  *See id.*

In this way, under the first clause, "[c]ompliance with this statute is like hitting a home run in baseball.  It assures a score, but there are other ways to be safe at home." *In re Brosnhahan,* 312 B.R. 220, 224 (Bankr. W.D.N.Y. 2004).  The initial agreement may provide one path to collecting the fee, but compliance with the "permitted by law" alternative provides a second equally valid path.  *See In re Lane,* No. 06-23879-ELP7, 2007 WL 1723502, at *6 (Bankr. D. Or. June 11, 2007) (recognizing that statute is "intended merely to provide a method to assure certainty for those lenders who chose to comply with the statute . . . but not to deprive those who would have had priority under existing law from the benefit of that existing law").  Each of the two paths for compliance with § 1692f(1) has an independent

---

CFPB, "*or*" an adjusted model form so long as the adjustments do not "affect the substance, clarity, or meaningful sequence of the disclosure").  As with § 1692f(1), under § 1604(b), if a creditor chooses to rely on the broader method of compliance, it must satisfy additional requirements that may be located in other sources of law.

effect by requiring the debt collector to consult distinct sources to determine whether a collection is allowed under the FDCPA.

## B.     *Plaintiffs' Valid and Enforceable Payment Services Contracts Are Permitted by Well-Settled State Contract Law.*

In the District Court, "Plaintiffs d[id] not dispute that, each time they paid a fee to make their monthly payments in a method not provided for by their loan agreements, they affirmatively agreed to do so pursuant to a valid contract" with Carrington.  ER-36 (citing ER-42).[5]  These valid state law contracts provide legal permission for Carrington to collect the fees in dispute under well-settled state law.

That a state law contract can render a fee and its collection "permitted by law" should require little, if any, debate.  Contract law is a long-standing body of law and the freedom to contract is an enshrined tenet of American law.  *See MB Fin. Grp., Inc. v. U.S. Postal Serv.*, 545 F.3d 814, 819 (9th Cir. 2008) (recognizing the "common law principles of contract law" as providing a "substantive law foundation").  "Each contract gives rise to an obligation or legal duty, enforceable in an action at law."  *Van Der Valk v. Shell Oil Co.*, 233 F. App'x 752, 754 (9th Cir.

---

[5]  Plaintiffs' failure to challenge the existence and validity of the state law contracts in the District Court (*see* ER-36, 42, 63–91) waives the issue on appeal.  *See Tibble v. Edison Int'l*, 843 F.3d 1187, 1193 (9th Cir. 2016).  Moreover, Plaintiffs raised no challenge in their Opening Brief.  *See* OB 22–26 (arguing that the FDCPA bars such agreements without disputing their existence or validity).  Accordingly, any challenge on reply would be improper.  *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("[A]rguments . . . omitted from the opening brief are deemed forfeited.").

2007). And "[a] contract has no legal force apart from the law that acknowledges its binding character." *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991).

Here, each Plaintiff affirmatively entered into contracts with Carrington, giving them the legal right under state law to make a payment via their preferred method and Carrington the legal right under state law to a fee for use of the payment service chosen by Plaintiffs. ER-36, 109–113, 136–38. These rights are enforceable under the state contract law of each Plaintiffs' home state.[6] The freedom to contract is enshrined in the state common law of contracts.[7] Absent affirmative limitations

---

[6] *See, e.g.*, *Van Der Valk*, 233 F. App'x at 754 (citing California law recognizing that valid contracts provide right to enforcement); *Livingston v. Green Props., Inc.*, 160 A.2d 594, 597 (Md. 1960) (stating that an enforceable agreement provides parties with the "right to require performance by the other"); *Molino v. Sagamore*, 105 A.D.3d 922, 923 (N.Y. App. Div. 2013) (recognizing that "valid and enforceable" contracts are entitled to enforcement in the absence of showing that enforcement "would be unreasonable or unjust, or would contravene public policy" among other reasons); *Johnson v. Johnson*, 306 S.W.2d 780, 783 (Tex. Civ. App. 1957) (holding that valid agreement "created a present contractual right" which vested party with the "legal right" to performance).

[7] *See, e.g.*, *Sheehan v. Atlanta Intl. Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987) (recognizing the "importance of the notion of freedom of contract and the desirability of finality of private dispute resolutions"); *Ontario, Inc. v. Samsung C & T Corp.*, 103 N.E.3d 774, 777 (N.Y. 2018) ("[I]t is a deeply rooted principle of New York contract law that parties may contract as they wish in the absence of some violation of law or transgression of a strong public policy"); *Shields Limited P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017) ("[P]arties have the right to contract as they see fit as long as their agreement does not violate the law or public policy."); *Anne Arundel Cnty. v. Hartford Acc. & Indem. Co.*, 621 A.2d 427, 433 (Md. 1993) (refusing to invalidate clause where doing so "would improperly infringe on the public interest in having individuals exercise broad powers to structure their own

stemming from contract law, or other sources of law, validly formed contracts are permitted by state law and are legally binding.

**C.    *Plaintiffs' Valid and Enforceable Payment Services Contracts Satisfy the "Permitted by Law" Clause of § 1692f(1).***

As set forth above, a validly formed contract gives rise to enforceable rights and thus legal permission.  This permission renders the agreed upon exchange at issue here—online or telephonic payment services for a fee—"permitted by law" within the meaning of § 1692f(1).  To avoid this straightforward conclusion, Plaintiffs press a string of arguments, the sum of which is that Congress did not mean what it said with the words "permitted by law."  Plaintiffs offer an interpretation of § 1692f(1) that would require the Court to rewrite the statute.  Further, they rely on maxims of construction, secondary sources, and policy concerns that are of no consequence when the text of the statute is clear.  Accordingly, Plaintiffs' arguments provide no basis for reversal.

1.  Plaintiffs' Interpretation Rewrites the FDCPA and Should Be Rejected.

At its base, Plaintiffs' argument is that "permitted by law" should be rewritten so that it that prohibits "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or *expressly authorized* ~~permitted~~ by

---

affairs by making legally enforceable promises, a concept which lies at the heart of the freedom of contract principle").

*statute* ~~law~~." OB 43, 54. This interpretation improperly rewrites the plain language Congress chose and is therefore incorrect. *United States v. Williams,* 659 F.3d 1223, 1225 (9th Cir. 2011) (rejecting interpretation in conflict with the "plain language of the statute" which would "insert phrases and concepts into the statute that are simply not there").

> i.   *Plaintiffs' Interpretation Improperly Replaces "Law" With "Statute."*

As they must, Plaintiffs admit that "contract law may be a form of 'law.'" OB 23. However, they also insist that "law" cannot possibly mean "law" in the context of § 1692f(1), and suggest that "statutory clue[s]" can overcome the statute's text to exclude contract law from its meaning. OB 32. Neither is the case here.

If Congress had intended to exclude common law as a permissive authority, it could have said so directly in the text. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521–22 (1992) (rejecting argument that statutory reference to "state law" be limited to statutory enactments since its "plain language" includes "positive enactments and common law" where "Congress meant precisely what it said"). Plaintiffs contend that the phrase "permitted by law" cannot refer to legal permission provided through the law of contract and that "law" in § 1692f(1) refers *only* to affirmative statutory enactments. OB 32–34. But that is not what Congress wrote. Instead, it chose the word "law," a term which encompasses much more than state or federal statutes or regulations. "At least since *Erie R. Co. v. Tompkins,* 304 U.S.

64 (1938), we have recognized the phrase 'state law' to include common law as well as statutes and regulations." *Cipollone*, 505 U.S. at 521.

The term "law" straightforwardly contemplates more than just positive enactments. It includes all of the law, including common law or decisional law, as well as statutes. *Norfolk*, 499 U.S. at 129–30. For example, the Supreme Court has expressly held that a statutory reference to "all other law" "does not admit of the distinction . . . between positive enactments and common-law rules of liability" and is "broad enough to include laws that govern the obligations imposed by contract." *Id.* This is plainly so because in order to be legally binding, contracts "depend[] on a regime of common and statutory law for [their] effectiveness and enforcement" such that the "obligation of a contract is the law which binds the parties to perform their agreements." *Id.*

In this respect, Plaintiffs—and recently the Fourth Circuit—mischaracterize Carrington's argument as an assertion that the lack of outright prohibition can render its fees "permitted by law" under § 1692f(1). OB 34 ("Permission, in other words, requires an affirmative authorization, not just indulgent silence."); *Alexander v. Carrington Mortg. Servs., LLC*, No. 20-2359, 2022 WL 164018, at *6 (4th Cir. Jan. 19, 2022)[8] ("So long as the law does not expressly prohibit it from doing so,

[8] Note, Carrington filed a Petition for Rehearing on February 2, 2022, requesting that the *Alexander* opinion be vacated and reheard. *See Alexander v. Carrington Mortg. Servs.*, No. 23-2359 (4th Cir.), ECF No. 63.

Carrington claims, it can charge whatever fees it wishes."). But that has never been Carrington's argument. It is not the lack of prohibition that affords permission under Plaintiffs' separate contracts with Carrington, but rather the affirmative authority inherent in the existence of a legal right to charge the convenience fees under state contract law. That there are no prohibitions on the fees (whether in state debt collection, consumer protection, or other laws) is pertinent to confirm the extent of the legal right that exists under a subsequent agreement.[9] A contract to charge a fee that has been prohibited would not be "permitted by law."

Furthermore, Plaintiffs assume, incorrectly, that recognizing state contract law as a permissive authority removes all constraints on debt collectors and allows "a debt collector to charge whatever fees it likes." OB 42. But that is simply not

---

[9] Neither the Maryland Consumer Debt Collection Practices Act ("MCDCA"), nor the California Rosenthal Fair Debt Collection Practices Act ("CA RFDCPA") prohibit or otherwise nullify Carrington's legal right to charge the convenience fees, either, because each of the provisions either rely upon a predicate violation of the FDCPA as a *per se* violation of the state statute, or employ the same or substantially similar language to § 1692f(1)'s "permitted by law." *See Alexander*, 2022 WL 164018, at *7 (holding that where "plaintiffs argue that because the fees are prohibited under § 14-202(11)" a provision that makes a violation of the FDCPA a *per se* violation of the MCDCA, "Carrington asserts rights that do not exist under § 14-202(8)"); Cal. Civ. Code § 1788.14(b) (prohibiting collection of "any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector . . . except, as *permitted by law*") (emphasis added); Cal. Civ. Code § 1788.13(e) (prohibiting the "false representation that the consumer debt may be increased by the addition of . . . charges if, in fact, such fees or charges may not *legally be added* to the existing obligation") (emphasis added). None of these statutes prohibit *per se* collection of convenience fees.

true.  First, agreements are not enforceable under the state law of contracts to the extent such agreements are illegal, in violation of public policy, or were induced by fraud or misrepresentation, among other reasons.[10]  *See, e.g.*, *DKS, Inc. v. Corp. Business Sols., Inc.,* 675 F. App'x 738, 739 (9th Cir. 2017) (describing California law where "a contract is void" for fraud in the inducement).

Second, as just noted, contractual legal rights may be limited by state debt collection laws, consumer protection statutes, or other sources of legal authority in that state.  Limitations under other sub-sections of the FDCPA also remain applicable.  For example, the FDCPA continues to prohibit the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  To the extent a plaintiff alleged an agreement was the result of deceptive representations by a defendant, the protections provided by the FDCPA remain intact.  *Cf.* OB 42 (arguing that under Carrington's interpretation, debt collectors can "avoid the FDCPA's limitations entirely").

"Congress is aware of the common-law background against which it legislates, and [we presume] that it does not intend to abolish all common-law [rules]

---

[10] Unlike child labor, below-minimum wages, and monopolistic contracts, the examples in *Lembeck v. Arvest Cent. Mortg. Co.*, convenience fees are not inherently against public policy.  No. 20-cv-03277-VC, 2020 WL 6440502, at *2 (N.D. Cal. Nov. 3, 2020).  Under the FDCPA, it is not the fee that is prohibited, but the conduct and the FDCPA sets forth no policy or prohibition against convenience fees when "permitted by law."

absent an express directive to retain them." *Chappell v. Robbins*, 73 F.3d 918, 924 (9th Cir. 1996). Plaintiffs contend without support that "when parties collect an 'amount' pursuant to a contract, that's because the *contract* 'permits' collection—not because contract *law* does," but that is plainly not so. OB 23, 33 (emphasis in original). An agreement between parties cannot authorize what the law will not permit. It is not the agreement itself which has legal significance, it is the body of contract law as a whole that renders particular types of agreements valid and enforceable under state law, creating legal rights associated with those contracts that did not exist prior to the agreement. *Norfolk*, 499 U.S. at 129–30 ("A contract has no legal force apart from the law that acknowledges its binding character."). Plaintiffs' suggestion to excise the law of contract from § 1692f(1) is not only incompatible with the plain language of the FDCPA as written, but also at odds with the recognition that "contract[s] depend[] on a regime of common and statutory law for [their] effectiveness and enforcement." *Id*.

In each of the states represented by Plaintiffs, as elsewhere, a validly formed contract gives rise to duties and obligations recognized, permitted, and, indeed, enforced by law. *See supra* I.B. Accordingly, and quite simply, absent some prohibition by statute, regulation, or elsewhere in the common law, Plaintiffs' valid and enforceable agreements authorizing the assessment of the fees render the amounts "permitted by law" under the law of contracts.

ii. *Plaintiffs' Interpretation Improperly Replaces "Permitted" with "Expressly Authorized."*

Plaintiffs' reading of the FDCPA requires the Court to overwrite § 1692f(1) by replacing the term "permitted" with "expressly authorized." OB 43 (arguing that § 1692f(1) prevents fees "unless either the instrument creating the debt or some preexisting state law *expressly authorizes* as much") (emphasis added); *see also* OB 45 (arguing that a fee must be "expressly authorized by a state (or federal) law"). But this interpretation is not credible because Congress used the phrase "expressly authorized" in the first clause of §1692f(1), but used a different term, "permitted," when allowing fees that are "permitted by law" under the second clause. This difference in language, in the very same sentence no less, must be given effect. *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1723 (2017) ("[W]hen . . . interpreting statutes we presume differences in language like this convey differences in meaning.").

Under its plain meaning, "permitted" has an entirely different implication than the term "expressly authorized," especially when those terms are used in such close proximity in the statute. It is "well-established" that "the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003). In the context of § 1692f(1), while "expressly authorized" necessarily requires an explicitly affirmative authorization, the term "permitted" does not require such

affirmative authorization.  *See Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 722 (9th Cir. 2003) (adopting "Black's Law Dictionary definition of the term 'permit' as meaning 'to suffer, allow, . . . to acquiesce, by failure to prevent'" and describing that this Court has found that the term "permit in [a] statute does not necessarily require an affirmative act of legal authority in order to 'permit' conduct"); *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 857 A.2d 1, 11 (Md. 2004) (rejecting argument that "an 'express' or affirmative action must be taken . . . in order to 'permit' private actions"); *S.E.C. v. Washington Inv. Network*, 475 F.3d 392, 401 (D.C. Cir. 2007) (rejecting argument that the term "permit" "means 'authorize,' which suggests an affirmative giving of permission" and adopting a definition meaning "in effect, acquiesce"); *Taylor v. United States*, 207 U.S. 120, 124  (1907) (stating that "by omitting due precautions to prevent it, [one] permits" the activity to occur).  Accordingly, it is enough to qualify as "permitted" under § 1692f(1) that the amount of fees collected are authorized by the Parties' separate agreements enforceable under state contract law and that statutes do not prohibit such authorization.

"Congress's explicit decision to use one word over another in drafting a statute is material." *McCarthy*, 322 F.3d at 656.  It is instructive that in passing the FDCPA, Congress considered and rejected precisely the language that Plaintiffs would have this Court adopt.  Specifically, Senate Bill 918, which the Senate Banking, Housing,

and Urban Affairs Committee considered in May 1977, proposed prohibiting the collection of any amount "unless such amount is *expressly authorized by law*." Fair Debt Collection Practices Act, S. 918, 95th Cong. (1977). The Senate rejected this language in favor of the language used in the enacted § 1692f(1) allowing collection of amounts "expressly authorized by the agreement creating the debt or permitted by law." Given the parallel choices to reject "expressly authorized by law" as a singular method of compliance and to use "expressly authorized" and "permitted" in two separate clauses of § 1692f(1), Plaintiffs' recommendation to conflate the term "permitted" with "expressly authorized" is directly contrary to Congress's decision to use the phrase "permitted by law," as well as Ninth Circuit and Supreme Court precedent.

      2.  <u>Plaintiffs Improperly Resort to Maxims of Construction to Alter the Plain Language of the FDCPA.</u>

It is ironic that Plaintiffs begin by asserting in the very first sentence of their Summary of Argument that the "*text and structure* of 15 U.S.C. § 1692f(1) bars" Carrington from charging Plaintiffs the convenience fees but then detail over six different canons of construction, pages of legislative history, and regulatory guidance in order to interpret the text's "plain meaning." OB 22 (emphasis added). The fact that Plaintiffs must rely on a handful of canons of construction and secondary sources to get to their proffered interpretation of § 1692f(1) evidences that their reading of the statute as written is not plain at all.

By asking the Court to look beyond the unambiguous language of the statute, Plaintiffs err. It is inappropriate to use canons of construction and secondary sources to ascertain (and alter) a statute's meaning, when, as here, the text of the statute is clear. *See CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) ("If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there."); *United States v. Collazzo*, 984 F.3d 1308, 1327–28 (9th Cir. 2021) (refusing to consider canons of construction and legislative history as "unnecessary" "[b]ecause the statutory language is not ambiguous"). Plaintiffs' reliance on these canons of construction and secondary sources is not only misplaced, but improperly seeks to impose a meaning onto the statute that its words do not reflect.

> i. *Section 1692f(1)'s "Authorized by the Agreement" Clause Is Not Rendered Superfluous by Carrington's Plain Language Interpretation of "Permitted By Law."*

Plaintiffs devote the majority of their Opening Brief to arguing that giving § 1692f(1)'s "permitted by law" clause its plain meaning renders superfluous its clause allowing charges "expressly authorized by the agreement creating the debt." *See* OB 26–39. But this argument fails at its most fundamental level. Recognizing that an enforceable contract can permit an amount to be collected does not negate or subsume the exception granted for charges that are set forth in the debt agreement. Both clauses maintain separate independent effect under the statute.

The first clause addressing the agreement creating the debt has independent effect even if the phrase "permitted by law" is read to include the permissive effect that state contract law has on contracts formed subsequent to the contract creating the debt. *See Brosnhahan*, 312 B.R. at 224. The first clause provides certainty to debt collectors that particular types of fees may be collected under § 1692f(1), regardless of whether state law is unsettled with respect to a particular type of fee or state law prohibits the fee. *See, e.g.*, *U.S. for Use & Benefit of Miller & Bentley Equip. Co. v. Kelley*, 327 F.2d 590, 591 (9th Cir. 1964) (recognizing statutory purpose to provide "certainty that [persons] would not [] be faced by claims").

The independent effect of the first cause of § 1692f(1) is thus certainty itself, which is not diminished or rendered superfluous by the existence of the "permitted by law" clause and its alternative means of identifying charges that debt collectors are allowed to collect under § 1692f(1). *See id.*; *Lane*, 2007 WL 1723502, at *6. The two clauses provide authorization for fees to be collected in different circumstances, each bearing independent methods of compliance and effect. *See id.* A fee that is charged pursuant to a separate, subsequent agreement is not "permitted by law" under the second clause if state law prohibits collection of such a fee because that subsequent agreement would not be enforceable in light of the state prohibition. As a result, the fee (both the amount and collection of the fee) would fall outside of the "permitted by law" method of compliance. If, however, the same fee was set

forth in the initial agreement creating the debt, it would be of no consequence under § 1692f(1) whether that same state law prohibited its assessment. *See O'Bryne v. Portfolio Recovery Assocs., LLC*, 596 F. App'x 565, 566 (9th Cir. 2015) (holding that where credit card agreement authorized particular fees and interest, its collection was "expressly authorized by the agreement creating the debt" without reference to other law or CA RFDCPA). In that situation, the fee would not violate § 1692f(1), even though the collector could be subject to liability under state law (or other sections of the FDCPA).

Plaintiffs' superfluity argument merely rephrases the argument they advanced and that was rejected by the District Court—that the "only logical reading of §1692f(1) is to prohibit [] separate agreements" relating to fees." ER-33 (citing ER-73). As the District Court recognized, such a reading is not "logical" at all. Plaintiffs' theory is entirely "circular" because there is no *per se* prohibition on charging convenience fees in the FDCPA. ER-34. "[T]he statute does not prohibit collection of fees that are *permitted* by law." *Id.* (emphasis in original). There is also "nothing in the FDCPA [that] prohibits Carrington from offering to enter into a new contract with the debtor, i.e., for the added convenience of paying by phone." ER-33–34. In the absence of some affirmative prohibition against entering into certain agreements or collecting convenience fees, Plaintiffs' reading does not hold water.

As a result, Plaintiffs are wrong that the "expressly authorized by the agreement creating the debt" clause is rendered superfluous where state contract law provides the legal permission under the second clause because both clauses continue to maintain independent effect. To adopt Plaintiffs' position, the Court would have to find that one method of compliance is rendered superfluous or meaningless by the mere existence of another, broader alternative method of compliance. The Court would also need to disregard centuries of preexisting state law concerning the enforceability of valid contracts and set aside countless valid agreements based on a flawed interpretation of a canon of construction. Such extreme and unorthodox measures are unnecessary to interpret the FDCPA as written. Accordingly, Plaintiffs' superfluity arguments do not provide any basis for reversal.

> ii. *Plaintiffs' Reliance on the Series-Qualifier Canon Is Misplaced.*

Plaintiffs argue that under the series-qualifier canon, the term "expressly" modifies both the phrase "authorized by the agreement creating the debt," as well as "permitted by law." OB 35. However, this Court has made plain that the use of the disjunctive term "or" separating the first clause from the second clause in § 1692f(1) indicates separate alternatives and "tends to cut off" the reach of the modifier "expressly." *United States v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 149 (1st ed. 2012)); *Gallegos*, 613 F.3d at 1215 (describing that the Court has

"consistently defined 'or' as indicating separate alternatives"). Because § 1692f(1) uses a disjunctive "or," to separate the first and second clauses, the "or" breaks the reach of the modifier "expressly," so that it modifies _only_ the word "authorized." _Gallegos_, 613 F.3d at 1215.

Plaintiffs' own cited authority reinforces this point. Section 1692f(1) falls exactly within the Supreme Court's guidance in _Duguid_ as to when the series-qualifier canon does _not_ apply. _Facebook, Inc. v. Duguid_, 141 S. Ct. 1163, 1169 (2021) (considering "a modifier at the end of the list" and holding that canon was properly invoked where "the modifier at issue immediately follows a concise, integrated clause," the two clauses at issue "share a common direct object," and a comma precedes the modifying phrase). _Id._ _None_ of these indicators are present in § 1692f(1), evidencing that the canon is inapplicable and that "expressly" does not modify "permitted."

### iii. Plaintiffs' Policy and Legislative History Arguments Do Not Warrant Reversal.

While Plaintiffs devote pages to detailing snippets from the legislative history concerning the FDCPA, such legislative history is inconsequential in the face of clear statutory language. _See Collazzo_, 984 F.3d at 1328 (where "statutory language is not ambiguous, the other tools of statutory construction are unnecessary"). But even if the Court were to consult legislative history to aid its understanding of the plain language of the statute, the only instance of Congress considering the phrase

"permitted by law" in the context of § 1692f(1) before the FDCPA was passed reveals that the phrase is intended to encompass amounts established by lawful contracts.  Specifically, in response to a draft of the FDCPA in Senate Bill 918, at a hearing in May 1977, the Consumer Bankers Association suggested that *if* Congress intended to allow collection of amounts established by "a contractual agreement that is not otherwise unlawful on the basis of statutory *or* decisional law," it would be "more appropriate" to use the phrase "permitted by law" than "expressly authorized by law."  *Fair Debt Collection Practices Act: Hearings before the Subcomm. on Consumer Affairs of the Senate Comm. on Banking, Housing, and Urban Affairs on S. 656, S. 918, S. 1130 & H.R. 5294*, 95th Cong. 743 (1977) (emphasis added).  Congress appears to have agreed.  While none of the draft bills under consideration used the phrase "permitted by law" to describe amounts that could be collected, *see* Fair Debt Collection Practices Act, S. 656, 95th Cong. (1977); Fair Debt Collection Practices Act, S. 918, 95th Cong. (1977);  Fair Debt Collection Practices Act, S. 1130, 95th Cong. (1977); Debt Collection Practices Act, H.R. 5294, 95th Cong. (1977), three months after the hearing, the Senate amended the FDCPA to include that exact phrase before passing the final version of the bill.  S. Rep. No. 95-382, at 61 (1977).

Plaintiffs' references in their Opening Brief to other portions of legislative history are inconsequential.  They support the uncontroversial notion that, in

enacting the FDCPA, Congress was concerned with preventing debt collection abuses. *See* OB 10–13 (detailing 11 different anecdotes ranging from 1977 to the more "recent" times, in which debt collectors threatened sexual abuse, arrest, or made harassing phone calls). But Plaintiffs' observation that the FDCPA was intended to address, for example, threats of bodily harm provides no insight that can assist the Court here. These anecdotes shed absolutely no light on the intention behind the "permitted by law" amendment, and none of the abusive tactics Plaintiffs highlight in the legislative record are alleged in this case. *See Sanchez v. United States,* 341 F.2d 225, 228 (9th Cir. 1965) (noting that "on this appeal we are confined to the record as it was made before the district court" and rejecting argument where the "facts of record fail to suggest the existence" of such allegations).

It is obvious that Carrington neither "imposed" nor "tacked" these fees on Plaintiffs. *Cf.* OB 9, 11–12, 44. Plaintiffs' mischaracterizations of the record on appeal are beside the point and cannot change the text of the FDCPA as written. Looking at the record on appeal, it is plainly established that Plaintiffs voluntarily agreed to pay this fee for the separate and additional service of paying through this alternative method, and to enjoy the benefits of immediate payment and posting.[11]

---

[11] Both Plaintiffs' and the CFPB's position on the potential benefits concerning the convenience fees are based on facts outside of the record. OB 24; Doc. No. 22 at 6 n.2, 22 (referring to the CFPB's "market understanding" and to surveys which were never raised to the District Court and are raised for the first time on appeal). Accordingly, they do not pose any basis for reversal. *See United States v.*

These contracts are enforceable under state contract law and Plaintiffs have never claimed that they did not receive the benefit of their bargains—that their payments were not processed or posted to their mortgage accounts. ER-36. Accordingly, Plaintiffs' "policy" arguments based on hypotheticals that are not implicated by the record on appeal must be ignored and do not provide a basis for reversal.

> 3. The Interpretations in the FTC Commentary and CFPB Compliance Bulletin Are Contrary to the Plain Language of § 1692f(1) and Are Not Entitled to Weight.

Plaintiffs point to FTC Commentary and a CFPB Compliance Bulletin to support a reading of § 1692f(1) that goes beyond its plain text. The FTC Commentary rephrases the statutory language "permitted by law," to read "*expressly* permitted by state law," Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988) (emphasis added), and the CFPB Compliance Bulletin reinterprets "permitted by law" to prohibit collection "where applicable law does not *expressly permit* collecting such fees," CFPB Compliance Bulletin 2017-01, 82 Fed. Reg. 35,936, 35,938 (2017) (emphasis added). As explained above, nothing in the words Congress selected for § 1692f(1) indicate that a fee must be *expressly permitted* by state law to be allowed under the FDCPA.

---

*Carpenter*, 816 F. App'x 159, 160 n.i (9th Cir. 2009) (noting that a court should "confine[] [its] review of the record to what was presented to the district court" and "declin[ing] to consider document that [party] submitted for the first time on appeal").

*Supra* I.C.2.iii.  And canons of statutory construction do not suggest otherwise.

*Supra* I.C.2.  The FTC and CFPB have read "permitted by law" more narrowly than

the text allows.[12]  And where such a reinterpretation "falls outside the range of

reasonable interpretations of the [FDCPA]'s express language," it is not entitled to

any weight.  *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995); *Fox v. Citicorp Credit*

*Servs., Inc.*, 15 F.3d 1507, 1513 (9th Cir. 1994) (declining "to adopt the position in

the FTC commentary because it conflicts with the plain language of the statute").

Further, as the FTC Commentary itself states, it "is not a formal trade

regulation rule or advisory opinion of the Commission, and thus is not binding on

the Commission or the public."  Staff Commentary on the Fair Debt Collection

Practices Act, 53 Fed. Reg. at 50,097, 50,101.  And for good reason.  Giving weight

to the FTC Commentary, which was not subjected to notice and comment

rulemaking or full agency consideration, over the text of the statute can lead to

---

[12] The CFPB's supervisory decisions on this topic appear to be a byproduct of the faulty interpretation of § 1692f(1) offered in the FTC Commentary.  The CFPB's Supervision Division found that collecting fees from borrowers "whose mortgage instruments did not expressly authorize collecting such fees and who reside in states where applicable law does not expressly permit collecting such fees" was an example of conduct that may violate or risk violating the FDCPA.  CFPB Compliance Bulletin 2017-01, 82 Fed. Reg. at 35,937–38.  According to the CFPB, the basis of this potential risk of violation was a district court decision, *Shami v. Nat'l Enter. Sys.*, Civ. No. 09-CV-722 (RRM)(VVP), 2010 WL 3824151, at *2 (E.D.N.Y. Sept. 23, 2010), which in turn relied on a discussion of the FTC commentary from *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999). *See* CFPB: Fall 2015 Supervisory Highlights, at 21 n.60, *available at* https://files.consumerfinance.gov/f/201510_cfpb_supervisory-highlights.pdf.

conclusions directly at odds with the framework of § 1692f(1). In *Tuttle v. Equifax Check*, for example, the Second Circuit relied on the FTC Commentary to suggest that "[u]nder the FDCPA, . . . [i]f state law expressly prohibits service charges, a service charge cannot be imposed even if the contract [creating the debt] allows it." 190 F.3d at 13. But § 1692f(1) is unequivocal. It prohibits collecting an amount "*unless* such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1) (emphasis added). Congress provided that no liability would arise under § 1692f(1) where an amount collected is authorized in the agreement creating the debt.[13] Even Plaintiffs admit that "[t]he FDCPA does not say, in so many words, that the 'authorized by the agreement' provision of § 1692f(1) requires that an amount be 'not prohibited' by law." OB 14 n.1. What is expressly prohibited or expressly permitted by state statute is inconsequential for purposes of liability under clause one of § 1692f(1) so long as the amount is authorized in the initial agreement. Accordingly, the Second Circuit was wise to avoid concluding based on the FTC Commentary that a charge can be permitted for purposes of the

---

[13] Here, again, language Congress considered and rejected when drafting § 1692f(1) is instructive. One of the bills considered in drafting § 1692f(1) proposed prohibiting the collection of an amount unless it is "expressly authorized by the agreement creating the debt *and* is legally chargeable to the consumer," precisely the type of limitation that the FTC Commentary suggests exists in the current statute. *See Fair Debt Collection Practices Act: Hearings before the Subcomm. on Consumer Affairs of the Senate Comm. on Banking, Housing and Urban Affairs on S. 656, S. 918, S. 1130 & H.R. 5294*, 95th Cong. 635 (1977).

FDCPA "*only* if a statute *affirmatively* authorizes it" because that would be simply untrue based on the two different methods of compliance set forth in the statute. *Tuttle*, 190 F.3d at 13 (emphasis added).

Further, in *Tuttle*, the Second Circuit merely opined as to whether the lack of statutory prohibition suffices for a fee to be "permitted by law" but did not address whether the body of state contract law could render a fee "permitted by law" under the FDCPA. 190 F.3d at 13. As described herein, it is not the lack of prohibition that renders the fee "permitted by law," but the legal permission enforceable at law under common law (the law of contract) that render the fees "permitted by law." *Supra* I.B. For this reason, *Tuttle* is distinguishable, as are many of Plaintiffs' cited authorities. *See, e.g.*, *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112 (7th Cir. 2008) (analyzing collection fees not set forth within initial agreement where "[n]either a law expressly permitting a collection fee . . . nor an agreement between the class members and [defendants] exists").[14]

---

[14] *See also McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-01831-MHH, 2017 WL 3315375, at \*7 (N.D. Ala. Aug. 3, 2017) (analyzing whether the fees were "authorized by the Electronic Fund Transfer Act [] and are thus 'permitted by law'" where "plaintiffs did not expressly agree to the [] fees in their contracts with [the mortgage servicer]"). Plaintiffs' other authorities rely on the same strained interpretation of the FTC Commentary, or on the same interpretation of § 1692f(1) that conflicts with its plain language. *See Fusco v. Ocwen Loan Servicing, LLC*, No.20-cv-80090-MIDDLEBROOKS, 2020 WL 2519978, at \*4 (S.D. Fla. Mar. 2, 2020) (holding that separate contract cannot render fees "permitted by law" without relying on legal support); *Lembeck*, 498 F. Supp. 3d at 1136–37 (requiring express authorization from "state or federal statute or regulation" without citing legal

**D.** *Carrington's Convenience Fees Are Not Incidental to the Mortgage Debt.*

As an additional ground for affirmance, Plaintiffs' FDCPA claims also fail because Carrington's convenience fees were not "incidental" to their underlying "principal obligation," as required under the FDCPA. ER-108, 110; § 1692f(1) (prohibiting the collection of "any amount (including any interest, fee, charge, or expense incidental to the principal obligation)"). The text makes clear that only amounts "incidental to the principal obligation" are covered by § 1692f(1).

> 1. Section 1692f(1) Requires a Showing That the Fees Are Incidental to the Mortgage Debt But Carrington's Convenience Fees Arise From Plaintiffs' Affirmative Actions, Not From the Mortgage Debt.

The plain meaning of § 1692f(1) must be determined by considering the words of the provision in "context," not by looking to any one specific word in a vacuum. *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1073 (9th Cir. 2016). While the statute uses broad terms like "any" and "including," a parenthetical phrase can modify the language it follows. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 701 (4th Cir. 2012) (holding that parenthetical phrase "follows, and modifies" its preceding clause based on the structure of the sentence and plain meaning); *United States v. Leed*, 981 F.2d 202, 207 (5th Cir. 1993) (agreeing with

---

authority other than § 1692f(1)); *McFadden v. Nationstar Mortg. LLC*, No. 20-cv-166-EGS-ZMF, 2021 WL 3284794, at *5, 10 (D.D.C. July 30, 2021), *report and recommendation* (requiring express statutory authorization based on *McWhorter*, and simply noting that case without analysis in a footnote).

this Court in *United States v. Cook*, 938 F.2d 149, 152 (9th Cir. 1991), in holding that "the parenthetical" beginning with "including" "modifies all of the activities that precede it").

Here, context makes clear that the parenthetical's enumeration of a subset of charges that can be collected from the borrower narrows the more general term "amount." Were it otherwise, the parenthetical would serve no purpose. Had Congress meant for § 1692f(1) to simply address all possible types of "amount[s]," as Plaintiffs suggest, it could have just omitted the parenthetical altogether. But it did not. Congress instead included an explanatory qualifier that the amounts must be "incidental" to the principal debt. This is the only reading that gives effect to all the words in § 1692f(1). *See James v. City of Costa Mesa*, 700 F.3d 394, 399 (9th Cir. 2012) (refusing interpretation that "results not only in surplusage, but also in semantic dissonance" when the language is "viewed in context"). Had Congress meant to prohibit the collection of "any amount," simpliciter, it could have omitted that parenthetical entirely. *Id.* at 398 (holding that "if Congress had intended that the exception cover only uses authorized" by the statute, it "could have omitted the [qualifying] language altogether"). Numerous courts have agreed that § 1692f(1) requires a threshold showing that the challenged amount be "incidental" to the principal debt. *See, e.g.*, *Shula v. Lawent*, 359 F.3d 489, 492–93 (7th Cir. 2004)

(requiring a showing that the payment was "incidental" to a claimed debt "[t]o establish a violation of section 1692f(1)"); *infra* n.15.

But, Plaintiffs cannot show that Carrington's convenience fees are "incidental" to the mortgage debt. Like virtually any term in the United States Code, the term "incidental" may have many possible meanings in the abstract. But here too, "context disambiguates." Scalia & Garner, *supra* at 70. Context makes plain that the only plausible meaning of "incidental" as used in § 1692f(1) is in line with definitions that require a close, direct connection—not mere correlation—between the underlying debt and the fees. *See Incidental*, *Oxford English Dictionary* (2d ed. 1989), https://www.oed.com/oed2/00114231 (defining "incidental" to mean "[o]f a charge or expense: [s]uch as is incurred (*in the execution of some plan or purpose*) apart from the primary disbursements") (emphasis added); *Incidental*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/incidental (last visited Feb. 11, 2022) (defining "incidental" as "[b]eing *likely* to ensue as a chance or *minor consequence*") (emphasis added). These definitions suggest that § 1692f(1) requires a causal connection, in that the fees be part of the "plan or purpose" or arise as a "consequence" of the "principal obligation" to qualify as "incidental."

"Incidental" cannot, in contrast, be understood here to merely require any conceivable connection—no matter how tenuous—to the underlying mortgage debt. Under such a definition, virtually *any* expense would qualify as "incidental" to the

principal obligation by mere association, such that there would be practically no charge that would not be subsumed. For the term "incidental" to have any meaning at all, it cannot be that the category of fees *not incidental* to the mortgage debt would be a null set. *See Torres v. Lynch*, 578 U.S. 452, 463 n.8 (2016) ("These words cannot be meaningless, else they would not have been used.").

Understood through this lens, the convenience fees cannot be considered "incidental" to the underlying mortgage contract. They were not incurred "in the execution of [the] plan or purpose" of the contract creating the debt, nor were they a "minor consequence of" that contract. In fact, the conveniences fees were not contemplated by the mortgage contract at all. Instead, the fees arose in the first instance because of entirely separate transactions—the numerous agreements that Plaintiffs voluntarily entered into with Carrington on their own choice for the purpose of gaining the legal right to make their payment through a method not covered under the mortgage and, in return, giving Carrington the legal right to collect the fees. The convenience fees, in other words, only arose as consideration for Plaintiffs' downstream, affirmative decisions to avail themselves of more convenient payment methods not contemplated in their mortgages.

That the challenged fees are outside of the "plan or purpose" of the underlying mortgage contract and are not a "consequence" of that contract is underscored by the fact that Plaintiffs do not (and cannot) allege that Carrington ever claimed a right

to the fees as part of servicing Plaintiffs' mortgages. *See* ER-63–91. Carrington simply offered access to an additional service, which Plaintiffs were not otherwise entitled to use under the mortgage (and which Carrington was not obligated to provide), for a fee. ER-36. Plaintiffs' use of alternative payment methods was optional and their monthly mortgage payments were accepted and credited appropriately regardless of how they chose to make their payment. *See* ER-108–12, 245 ¶¶ 50–52, 247 ¶ 65, 249 ¶¶ 77–79, 250 ¶¶ 90–91. Indeed, though Carrington offered alternative payment methods other than those set forth in the mortgage contracts, there are no allegations that Carrington steered or misled borrowers toward them. *Id*.

A number of district courts have found that such optional convenience fees are not incidental on this basis. *See, e.g.*, *Flores v. Collection Consultants of Cal.*, No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (explaining that the fee was not "incidental" to the debt because it was only charged when a consumer chose "to affirmatively and separately opt-in" to the alternative payment method).[15] As in these cases, Plaintiffs could have avoided (and

---

[15] *See also Lish v. Amerihome Mortg. Co., LLC*, No. 2:20-cv-07147-JWW-JRPx, 2020 WL 6688597, at *3–4 (C.D. Cal. Nov. 10, 2020); *Estate of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1265 (S.D. Fla. 2020); *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111-24TGW, 2020 WL 5104523, at *4 (M.D. Fla. Aug. 12, 2020); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470, at *2–3 (M.D. Fla. July 31, 2020); *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1265 (M.D. Fla. 2020); *Garbutt v. Ocwen Loan Servicing,*

did at times avoid) this charge by mailing in their payment, but instead voluntarily chose to use this separate service on multiple occasions. ER-36, 245 ¶¶ 50–52, 247 ¶ 65, 249 ¶¶ 77–79, 250 ¶¶ 90–91. That nearly a decade passed between the time of the loan origination and Plaintiffs' agreements to use of the online and phone payment services demonstrates that the convenience fees were not a consequence of the mortgage transaction, Plaintiffs understood they had other payment options available, and the fees instead arose solely based on Plaintiffs' voluntary decision to use an additional and separate service in exchange for the agreed-to fee. *Id.*; ER-108–12; *see Flores*, 2015 WL 4254032, at *10; *Lish*, 2020 WL 6688597, at *4.

> 2. <u>Plaintiffs' Limitless Reading of "Incidental" Is Contrary to the FDCPA and Demonstrates That Carrington's Convenience Fees Are Not Actionable.</u>

Plaintiffs—and the Fourth Circuit in *Alexander*—assert that mere but-for causation is enough. OB 47 ("After all, there would be no reason to pay the fee but for the need to pay the principal obligation."); *Alexander*, 2022 WL 164018, at *5 n.2 ("Without the mortgage payment, there is of course no convenience fee."). But if the "incidental" requirement is to have any force at all, there must be some category of fees that satisfy that definition and others that do not, or else the requirement is entirely read out of the provision. That is where Plaintiffs' reading

---

*LLC*, No. 8:20-cv-136-T-36JSS, 2020 WL 5641999, at *3 (M.D. Fla. Sept. 22, 2020); *Reid v. Ocwen Loan Servicing, LLC*, No. 20-cv-80130-SINGHAL, 2020 WL 5104539, at *1 (S.D. Fla. May 4, 2020).

falters, as it cuts off any possibility that a debt collector could ever collect a fee that could be deemed non-incidental.  Plaintiffs admit of no limiting principle to their proposed interpretation.  *See* OB 47.  And no meaningful outer boundary exists if all that is necessary under § 1692f(1) is a showing that the creation of the mortgage debt precedes the time at which a fee is paid.

Indeed, Plaintiffs' limitless reading of "incidental" would sweep in a host of activities clearly not contemplated by § 1692f(1).  Take the example where a borrower hand delivers a check payment to the collector, and in delivering such payment, is faced with the option of either parking for free on the street several blocks down from the collector's office, or to use the valet parking option for a small fee and park directly at the collector's property.  A borrower's voluntary choice to pay the parking fee in lieu of the marginally less convenient, cost-free method cannot reasonably be considered among the "unfair or unconscionable means" that Congress had in mind in drafting the FDCPA.  § 1692f.  Yet the fees would be actionable under Plaintiffs' proffered reading of "incidental."  The parking fee would not have arisen *but for* the need to make the mortgage payments; "of course" the borrower would not have been onsite and had the need to park in the first place.  *Alexander,* 2022 WL 164018, at *5 n.2.  If such a fee is not outside the definition of "incidental," then nothing is.

Further, the record below shows the convenience fees charged by Carrington are not "incidental" to Plaintiffs' mortgage debts at all. Taking guidance from the Seventh Circuit in *Shula*, the collector in that case asserted that its entitlement to the fees arose as of right, such that the collector could unilaterally impose the charge (and include such charge in the borrower's debt) as a result of—or an incident of— the initial debt. 359 F.3d at 493 (holding that "had it not been for the suit against Shula to collect the debt he owed the doctor, no claim for costs would have arisen"). In other words, the fees at issue in *Shula* were a direct consequence of the initial debt obligation since the basis of the collector's claimed right to the fees derives from the debt obligation itself, and was, therefore, "incidental." *Id.*

However, that is not the case here. It was Plaintiffs' decision to use a service, not Carrington's right to collect the principal obligation, that led to the existence of the fee. The fee is untethered to—and certainly not a consequence of—the principal obligation itself. It did not arise as part of the "plan or purpose" of the mortgage, either as of right from the mortgage agreement or Plaintiffs' failure to meet any obligations under the agreement—there are no allegations that Carrington asserted a unilateral right to assess the fees by virtue of the principal obligation or the terms of the mortgage agreement. *Cf. Shula,* 359 F.3d at 493.

While, of course, the convenience fees *correlate* to the initial mortgage debt, the fees did not arise from the mortgage debt itself. Rather, they arose because of

Plaintiffs' affirmative choices to avail themselves of a separate service not otherwise provided in the mortgage debt itself and gain the legal right to make their payment online or over the phone in exchange for a fee (wherein the fee was given in consideration of Carrington's obligation to accept payment in a method which it was not otherwise obligated to accept under the mortgage contract and provide a service it had no obligation to offer). Carrington never asserted that it had the right to the fee if Plaintiffs did not want the separate payment service. *See* ER-237–268. And at no point has Carrington asserted a unilateral right to "impose" or "assess" the convenience fees or that if a borrower does not pay the convenience fee, that the fee could or would be added to the borrower's debt or form the basis for default or remedies under the mortgage agreement. *Id.* Quite the contrary, the fees arose directly from Plaintiffs' decisions and actions.

This plain language interpretation of "incidental" is supported by the case law. *See, e.g.*, *Shula*, 359 F.3d at 493; *Flores*, 2015 WL 4254032, at *10 (finding convenience fees not incidental to mortgage debt where fee was not "imposed uniformly as *part of the underlying amount owed*" but upon borrower's decision to "affirmatively and separately opt-in to this alternative method" and where "nothing . . . steered the consumer to payment") (emphasis added); *Lish*, 2020 WL 6688597, at *3 (finding convenience fee not incidental where there were no

allegations of steering and borrower "entered into a separate agreement . . . to pay by telephone, with all of the ease and immediacy that method of payment offered").

In contrast, Plaintiffs make much of the reasoning of one California district court adopting an expansive view of "incidental." OB 47 (citing *Lembeck*, 498 F. Supp. 3d at 1136). That court analogized convenience fees to different classes of service on an airplane, reasoning that a decision to upgrade to a first-class ticket is still an incident of the original decision to fly and, likewise, that the "class" of payment service selected by Plaintiffs to pay bills is an incident of the underlying obligations. *Id.* Rather than support Plaintiffs' position, the analogy undercuts it. The purpose of fair debt collection practices statutes is not to limit consumer choices—to say, as *Lembeck* suggests, that a choice as to class of service is not a distinct choice from whether to fly or pay at all. Nor is the purpose to require airlines to offer everyone first class accommodation for free—as is the implication of this lawsuit—that Carrington must offer, for free, a better payment option than Plaintiffs originally contracted for. *Cf. Alexander*, 2022 WL 164018, at *7 ("Nothing we have said prevents Carrington from extending this payment option to consumers. If it does so, however, it must do so without the imposition of a statutorily prohibited convenience fee."). To carry the analogy forward, the purpose of the FDCPA is to prevent an airline from taking a passenger who signed up for coach, put him in first

class, and then demand that the consumer must pay for the upgrade even though he had no choice.

There is no suggestion in the complaint or the record that Carrington engaged in any such practice. *See* ER-237–268. It is undisputed that Plaintiffs could make a mortgage payment using a number of payment channels *without incurring convenience fees,* and, therefore, the convenience fee is not a consequence of the monthly payment of the mortgage. Accordingly, the convenience fees are not incidental to the mortgage debt as required under the FDCPA, and affirmance is warranted on this additional basis.

### E. *The Complaint Fails to Plead Plausibly That Carrington Is a Debt Collector Under the FDCPA.*

As an additional basis for affirmance, the record clearly reflects that Plaintiffs failed to plausibly allege that Carrington was acting as a "debt collector" as required to state a FDCPA claim. ER-119–21. Neither Plaintiffs Thomas-Lawson, Boley, nor Green pled any factual statements showing that their mortgages were in default, but merely concluded that their loans were in default at the time Carrington acquired the servicing rights. *Id.* That is plainly insufficient. *Mannello v. Residential Credit Sols., Inc.*, No. 2:15-cv-07674-CAS-AJW, 2016 WL 94236, at *4–5 (C.D. Cal. Jan. 7, 2016) (finding allegations insufficient to establish servicer was a "debt collector" where plaintiff alleged loan was in default but did not otherwise "describe or define

the terms of plaintiff's default"). Accordingly, the record reflects an additional basis for affirmance.

## II. There Are No Alternative Grounds for Reversal.

Plaintiffs raise two arguments for reversal, aside from those relating to the FDCPA. First, Plaintiffs seek to reverse the District Court's dismissal so that the District Court can consider the state law claims on their merits, and in light of the "proper interpretation of § 1692f(1)," since the District Court treated these claims as rising and falling with the FDCPA claims. OB 48. Second, Plaintiffs contend that the District Court misallocated onto Plaintiffs the burden of establishing that the convenience fees were not "permitted by law," when such burden should have been placed on Carrington to establish an affirmative defense. OB 49–55. Both arguments are wrong. Further, the arguments raised in the CFPB's Amicus Brief also do not warrant reversal. The CFPB's interpretation of the FDCPA is divorced from the plain language of § 1692f(1) and is not entitled to deference or persuasive value.

### A. *Plaintiffs Have Abandoned Any Argument Regarding the State Law Claims, and Therefore, the State Law Claims Do Not Warrant Reversal.*

In a single paragraph in their Opening Brief, Plaintiffs briefly note that the District Court "erroneously believed all [Plaintiffs' state law claims] rose and fell with the FDCPA claims" and therefore, seek reversal so that the District Court can

46

consider those arguments. OB 48. While Plaintiffs wish to rewrite the record on appeal, the District Court's belief was not erroneous. The District Court held Plaintiffs to their express concession made in their briefing on the Motion, where Plaintiffs admitted as follows: "Because these statutes are identical to the FDCPA, the parties agree that other than the question of whether Carrington is a 'debt collector' within the meaning of each statute, the analysis of whether Carrington violated section 1692f(1) of the FDCPA and its state analogues is the same." ER-35 (quoting ER-73); *see also* ER-63 (Plaintiffs referring to state statutes as containing "identical provisions" as the FDCPA).

Plaintiffs do not dispute in their Opening Brief that they made such concessions in the District Court. OB 48. They ignore it and conclude without support that the District Court "erroneously" refused to consider their state law claims. *Id.* Accordingly, it is established for purposes of appeal that the state law claims do, in fact, "rise and fall" with the FDCPA claims as a result of Plaintiffs' concession in the District Court and failure to dispute in their Opening Brief. *See Zion v. Cnty. of Orange*, 874 F.3d 1072, 1077–78 (9th Cir. 2017) (rejecting plaintiff's argument that district court holding was "erroneous" where "district court relied on plaintiff's concession" and affirming dismissal); *Reynoso v. Giurbino*, 462 F.3d 1099, 1110 (9th Cir. 2006) (party "is bound by its concessions" to the district court).

To the extent Plaintiffs address the substance of the state law claims and the "alternative arguments" relating to these claims, they do so entirely within a single footnote in their Opening Brief. OB 48 n.2. It is well established that under Federal Rule of Appellate Procedure 28, a party cannot preserve an issue on appeal through an argument made within a footnote. *See Parsons v. Ryan*, 949 F.3d 443, 455 n.2 (9th Cir. 2020), *cert. denied sub nom. Shinn v. Jensen*, 141 S. Ct. 1054 (2021) (concluding that argument made in a footnote without elaboration was "forfeited due to inadequate briefing"); *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) ("[A] party may waive an argument by disputing a district court's ruling in a footnote or a one-sentence assertion that lacks citation to record evidence"). Here, Plaintiffs' footnote does not cite to the record or elaborate in any way regarding which "arguments" it would have the District Court reconsider, so it is impossible to know exactly what Plaintiffs deem worthy of reversal and remand.[16] *Id.*; OB 48 n.2. This is grossly deficient and cannot support reversal.

But even if the Court were to consider the "arguments" Plaintiffs raise in their footnote regarding the state law claims, none provide basis for reversal. First, Plaintiffs' only reference to state law points to a provision of the CA RFDCPA that prohibits collecting a fee "except as permitted by law," containing the identical

---

[16] To the extent that Plaintiffs attempt to brief more extensively or reverse their waiver, Carrington reserves the right to reply in writing to any substantive arguments they make in their forthcoming Reply Brief.

language from the federal FDCPA that is the primary focus of this appeal. OB 48 n.2. Next, Plaintiffs assert that mortgages insured by HUD require fees to be authorized by the Secretary of HUD, without providing a single citation to the record. *Id.* Notwithstanding that this assertion is inadequate to constitute a genuine argument under Federal Rule of Appellate Procedure 28 and cannot form the basis for reversal, it is also plainly unsupported by the law. *See Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 939 (7th Cir. 2021) (finding that HUD mortgages "do not automatically incorporate HUD regulations" and such loan agreements do not limit fees to those authorized by the Secretary).

### B. *Plaintiffs' Arguments Concerning the Affirmative Defense Are Irrelevant and Lack Merit.*

Plaintiffs contend for the first time on appeal that the issue of whether the fees are "permitted by law" is an affirmative defense that the District Court improperly required Plaintiffs to bear the burden of disproving. OB 49–56. But Plaintiffs have waived any argument concerning such affirmative defenses by failing to raise it in the District Court at any point in time. *See Tibble*, 843 F.3d at 1193. Allowing Plaintiffs to raise the issue now—after remaining silent in the District Court when Carrington's Motion clearly argued that state contract laws render the fees "permitted by law" and that Plaintiffs' allegations failed to state a claim—is in clear violation of Circuit precedent and should not be allowed. *Id.*

In any event, the District Court did not place an improper burden on Plaintiffs. Rather, it addressed and dismissed "Plaintiffs'. . . incorrect legal theory that pay-to-pay fees *per se* violate § 1692f(1)." ER-34. The District Court dismissed Plaintiffs' claims because they rested solely on Plaintiffs' legal argument that the fees were barred as a matter of law "merely" because the "fees are not expressly authorized by the mortgage agreements." *Id.* Having failed to plead or argue "any" basis that the fees were not "permitted by law," the District Court dismissed Plaintiffs' claims for lack of a "cognizable" legal theory. *Id.* In short, the District Court held Plaintiffs to the theory of liability they argued and found it wanting. That is routine motion to dismiss practice.

Moreover, it is illogical for Plaintiffs to contend that a violation of the FDCPA can be plausibly pleaded without reference to or application of *both* conditions of FDCPA liability under § 1692f(1): that the fees not be "expressly authorized by the agreement creating the debt or permitted by law." Under Plaintiffs' theory, a plausible case under § 1692f(1) could be pleaded merely by alleging that an amount was collected by a debt collector and nothing more. The collection of any bill—i.e. the basic and ordinary act of collecting when due a monthly payment—would state a claim. Under Plaintiffs' argument, that would be sufficient to survive a motion to dismiss and require a motion for summary judgment, or even a trial, to resolve. This is true even when the amount was plainly authorized by the agreement creating the

debt or permitted by law.  For that reason, courts across the nation recognize that a violation of § 1692f(1) cannot be pleaded plausibly where it is undisputed that either the fee is expressly authorized by the agreement creating the debt or permitted by law.[17]

Further, under Ninth Circuit precedent, in light of Plaintiffs' failure to dispute the existence of their agreements with Carrington for online or telephonic payment services, the District Court properly turned to the validity of Plaintiffs' legal argument that § 1692f(1) imposed a *per se* bar to the agreements.  *See Widjaja v. J.P. Morgan Chase Bank, N.A.*, 21 F.4th 579 (9th Cir. 2021) (holding that where defendant "concludes that the [Electronic Funds Transfer Act] authorizes liability in excess of the default cap, *the consumer must allege facts plausibly suggesting that the bank's conclusion is wrong* in order to state a claim that the bank has violated § 1693g") (emphasis added).

### C.    *Nothing in the CFPB's Amicus Brief Warrants Reversal.*

Further, there is nothing in the CFPB's Amicus Brief that justifies overturning the District Court's dismissal with prejudice.  The CFPB presses the same strained

---

[17] *See, e.g.*, *Zizlsperger v. Maxwell & Morgan PC*, 565 F. App'x 633, 636 (9th Cir. 2014) (affirming dismissal of §1692f(1) claims because the attorneys' fees were permitted by operation of state court order and state statute); *Benedict v. CACH, LLC*, No. 12CV1072 AJB (DHB), 2012 WL 5382255, at *7 (S.D. Cal. Nov. 1, 2012) (holding that plaintiff "has not alleged sufficient facts to set forth a plausible claim" under § 1692f(1) where fees authorized by credit card agreement).

interpretation of § 1692f(1) proffered by the Plaintiffs and, as shown above, that interpretation is contrary to the plain language of the FDCPA. Doc. No. 22 at 9–11. For that reason, this Court should not afford any deference to the CFPB's position. *See United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (recognizing that *Skidmore* deference extends so far as an interpretation has the "power to persuade") (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). That "power to persuade" is at an end where—as here—an agency's reading plainly conflicts with the language of the statute as written and enacted. *See Scalia v. Dep't of Transp. & Pub. Facilities*, 985 F.3d 742, 748 (9th Cir. 2021) (refusing to defer under *Skidmore* to agency's statutory interpretation where the contrary reading is "most faithful to the [statute's] text, structure, and purpose"); *United States v. Casasola*, 670 F.3d 1023, 1030 (9th Cir. 2012) (refusing to defer under *Skidmore* to agency's statutory interpretation where it "conflict[s] with the words and obvious meaning of the statute").

This Court has not hesitated in the past to reject the CFPB's interpretation of the FDCPA in favor of a better reading of the statute. *See Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 576 n.10 (9th Cir. 2017) (refusing to "defer" to "the agency's reading of the statute" in CFPB amicus brief); *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1194 (9th Cir. 2019) (Kleinfeld, J., concurring in part and dissenting in part ) (explaining that "[t]here is no ambiguity in the statute that

even opens the door to deference" and refusing to defer to CFPB's position in amicus brief as "unpersuasive" "because of its lack of support in the text"). It should not hesitate to do so here.

## **CONCLUSION**

Accordingly, for the reasons set forth above, the Court should affirm the District Court's judgment in its entirety.

Dated: February 14, 2022

*/s/ Fredrick S. Levin*

Fredrick S. Levin
BUCKLEY LLP
100 Wilshire Blvd, Suite 1000
Santa Monica, CA 90401
Telephone: (310) 424-3900
Facsimile: (310) 424-3960
flevin@buckleyfirm.com

*Counsel for Defendant-Appellee*
*Carrington Mortgage Services, LLC*

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(1), Defendant-Appellee Carrington Mortgage Services, LLC hereby respectfully requests oral argument before this Court. Resolution of these issues would be facilitated if the Court had the opportunity to question the Parties and hear elaboration on the briefing.

Dated: February 14, 2022

Respectfully submitted,

*/s/ Fredrick S. Levin*
Fredrick S. Levin
Buckley LLP
100 Wilshire Blvd., Suite 1000
Santa Monica, CA 90401
Tel.: (310) 424-3984
flevin@buckleyfirm.com

*Counsel for Appellee*

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Cir. R. 32-1(a) because:

[x] This brief contains 13,674 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Cir. R. 32-1(c).  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[x] This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2018 in 14 point Times New Roman font.


Dated: February 14, 2022                         Respectfully submitted,
                                                 */s/ Fredrick S. Levin*
                                                 Fredrick S. Levin

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document using the appellate CM/ECF system on February 14, 2022. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

Respectfully submitted,

*/s/ Fredrick S. Levin*

Fredrick S. Levin