# In the United States Court of Appeals for the Ninth Circuit

---

AMY THOMAS-LAWSON; BRENDA BOLEY; MIGUEL PADILLA; WILLIAM GREEN,
on behalf of themselves and all those similarly situated,
*Plaintiffs-Appellants*,

v.

CARRINGTON MORTGAGE SERVICES, LLC,
*Defendant-Appellee*.

---

On Appeal from the United States District Court
for the Central District of California
No. 20-cv-7301 (The Hon. Otis D. Wright, II)

---

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

HASSAN A. ZAVAREEI
KRISTEN G. SIMPLICIO
TYCKO & ZAVAREEI LLP
1828 L Street, NW, Suite 1000
Washington, DC 20036
(202) 973-0900

ANNICK M. PERSINGER
TYCKO & ZAVAREEI LLP
10880 Wilshire Boulevard, Suite 1101
Los Angeles, CA 90024
(213) 425-3657

PATRICIA M. KIPNIS
BAILEY & GLASSER LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
(856) 324-8219

DEEPAK GUPTA
LINNET DAVIS-STERMITZ
GUPTA WESSLER PLLC
2001 K Street, NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
*deepak@guptawessler.com*

JAMES L. KAUFFMAN
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
(202) 463-2101

April 6, 2022                    *Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

Table of authorities .................................................................................................. ii

Introduction ........................................................................................................... 1

I. The FDCPA's text prohibits debt collectors from collecting
extra "amount[s]" on the basis of agreements other than the
original "agreement creating the debt." ............................................... 2

    A. On Carrington's reading, the phrase "agreement creating
the debt" is rendered meaningless. ........................................... 3

    B. In context, the phrase "permitted by law" is best read to
require that a particular amount to be collected has been
"expressly . . . permitted" by a specific "law." .......................... 7

II. Pay-to-pay fees qualify as an "amount" under the FDCPA. ............. 10

III. The plaintiffs' complaint properly alleges that Carrington is a
debt collector. ...................................................................................... 14

IV. The plaintiffs have preserved their state-law claims at every
step. ..................................................................................................... 15

V. In any event, Carrington would bear the burden to prove its
contract-based affirmative defense. ................................................... 16

Conclusion ........................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Carrington Mortgage Services, LLC,*
23 F.4th 370 (4th Cir. 2022) ............................................................*passim*

*Clark v. Capital Credit & Collection Services,*
460 F.3d 1162 (9th Cir. 2006) ................................................................. 5

*Corley v. United States,*
556 U.S. 303 (2009) ................................................................................. 3

*Evankavitch v. Green Tree Servicing, LLC,*
793 F.3d 355 (3d Cir. 2015) ................................................................... 17

*Facebook, Inc. v. Duguid,*
141 S. Ct. 1163 (2021) ......................................................................... 9, 10

*Hillman v. Maretta,*
569 U.S. 483 (2013) ................................................................................. 7

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018) ............................................................................... 8

*Johnson v. Riddle,*
305 F.3d 1107 (10th Cir. 2002) ............................................................. 8, 9

*Levitt v. Yelp! Inc.,*
765 F.3d 1123 (9th Cir. 2014) ............................................................... 15

*Loughrin v. United States,*
573 U.S. 351 (2014) ................................................................................. 3

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*
637 F.3d 939 (9th Cir. 2011) ............................................................... 5, 16

*O'Bryne v. Portfolio Recovery Associates, LLC,*
596 F. App'x 565 (9th Cir. 2015) ............................................................. 6

*Pollice v. National Tax Funding, L.P.,*
225 F.3d 379 (3d Cir. 2000) ................................................................. 5, 9

*Rota-McLarty v. Santander Consumer USA, Inc.*,
   700 F.3d 690 (4th Cir. 2012) .................................................................. 11

*San Gerónimo Caribe Project, Inc. v. Acevedo-Vilà*,
   687 F.3d 465 (1st Cir. 2012) .................................................................. 18

*Seeger v. AFNI, Inc.*,
   548 F.3d 1107 (7th Cir. 2008) .................................................................. 9

*Shula v. Lawent*,
   359 F.3d 489 (7th Cir. 2004).................................................................. 12

*Smith v. United States*,
   133 S. Ct. 714 (2013).................................................................. 17

*Tuttle v. Equifax Check*,
   190 F.3d 9 (2d Cir. 1999).................................................................. 5, 9

*United States v. Cook*,
   938 F.2d 149 (9th Cir. 1991).................................................................. 11

*United States v. Leed*,
   981 F.2d 202 (5th Cir. 1993).................................................................. 11

*United States v. Nishie*,
   996 F.3d 1013 (9th Cir. 2021) .................................................................. 10

*Widjaja v. JPMorgan Chase Bank, N.A.*,
   21 F.4th 579 (9th Cir. 2021) .................................................................. 17

## Statutes

15 U.S.C. § 1692f(1)..............................................................*passim*

## Other Authorities

Antonin Scalia & Bryan A. Garner,
   *Reading Law: The Interpretation of Legal Texts* (2012) .............................. 9, 10

Antonin Scalia,
   *A Matter of Interpretation: Federal Courts and the Law* (1997) .......................... 7

*Garner's Dictionary of Legal Usage* (3d ed. 2011) .................................................. 8

The American Heritage Dictionary (2d college ed. 1982).........................................12

The Random House Dictionary of the English Language (2d ed. 1987) ................13

# INTRODUCTION

The Fair Debt Collection Practices Act prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Does this provision allow the collection of an amount that is *not* "authorized by the agreement creating the debt" but *is* authorized by a later agreement between the consumer and the debt collector?

The statutory text, on its own, supplies the answer: No. For at least three decades, that's been the consistent answer of the regulators charged with interpreting this statute—as reflected in the Consumer Financial Protection Bureau's brief in this case. And it's likewise been the answer of every federal circuit to touch on the issue, together with most district courts. Most recently, in an opinion by Judge Wilkinson in *Alexander v. Carrington Mortgage Services, LLC*, 23 F.4th 370, 377–79 (4th Cir. 2022), the Fourth Circuit carefully explained why this longstanding consensus reflects the reading most faithful to the FDCPA's text, structure, and purpose. Faced with the same company and the same collection practices at issue here, the Fourth Circuit held that "Carrington's convenience fees were not 'permitted by law.'" *Id.* at 377.

Without addressing the reasoning of the Fourth Circuit or the CFPB, Carrington urges this Court to break from this consensus, create a circuit split, reject the regulators' longstanding guidance, and read the statute's second exception as a

kind of catch-all that sweeps in any collection fee that a debt collector is able to tack on via its own contracts. On this view, the FDCPA gives debt collectors a free pass to generate and extract profitable new fees from consumers, without having to identify any specific "law" that has "permitted" those "amount[s]."

But, if that's really what Congress intended, why did it limit the first exception to only one kind of agreement—the "agreement creating the debt"? Wouldn't reading the second exception as broadly as Carrington urges render Congress's textual limitation meaningless? What purpose would Congress have been trying to accomplish? And if Congress meant to sweep *any* new agreement into the second exception, why enact two exceptions—one for "agreements," one for "law"?

Despite 53 pages of dense argument, Carrington's brief offers no coherent answers to any of these questions. Carrington's proposed reading, as the Fourth Circuit recognized, "places the statute's two exceptions at war with one another," would render the first exception "superfluous," and "would frustrate the FDCPA's goals." *Alexander*, 23 F.4th at 377–78. This Court should reject it.

## I. The FDCPA's text prohibits debt collectors from collecting extra "amount[s]" on the basis of agreements other than the original "agreement creating the debt."

Carrington has an unenviable challenge: It must explain how, on its reading, the statute's two narrow exceptions—one for "agreements," the other for "law"— work together, and why Congress would have limited the first exception to "the

agreement creating the debt" if it wanted to permit collectors to rely on their own, later agreements. Carrington makes two basic moves in this appeal, only the first of which seeks to respond to that challenge. *First*, Carrington briefly attempts—at pages 24 through 27—to show that its reading doesn't render the first exception superfluous. Those pages deserve careful scrutiny. *Second*, Carrington's remaining arguments aim to show that "permitted by law," if read in isolation, can justify resort to contract-law principles—an attempt that, given the rest of the statute, is largely beside the point. Neither effort is persuasive, and we address each in turn.

### A. On Carrington's reading, the phrase "agreement creating the debt" is rendered meaningless.

Carrington cannot explain away "the statute's focus, in the first prong, on the original agreement." *Alexander*, 23 F.4th at 378. The "cardinal principle" of interpretation is that "courts must give effect, if possible, to every clause and word of a statute," *Loughrin v. United States*, 573 U.S. 351, 358 (2014), "so that no part will be inoperative or superfluous, void or insignificant," *Corley v. United States*, 556 U.S. 303, 314 (2009) (here, and unless otherwise noted, all quotations cleaned up). Carrington flunks that test. "If general contract principles are enough to permit the charging of [] fees, then the statute's prong permitting amounts 'expressly authorized by the agreement creating the debt' becomes superfluous. There would be no need to say this if Carrington is right, for an 'agreement creating the debt' is by definition a valid contract." *Alexander*, 24 F.4th at 379.

Without grappling with *Alexander*, Carrington seems to acknowledge (at 24) that its reading falters unless it can assign some "separate independent effect" to the two exceptions, such that its broad interpretation of the second doesn't swallow the first. But Carrington's attempt to do so produces even deeper problems.

Here, in a nutshell, is Carrington's argument: The sole "independent effect" of the "agreement creating the debt" exception is to "provide[] certainty to debt collectors that particular types of fees may be collected under § 1692f(1)." Carrington Br. 25. What types of fees? *Any* fees, the company says—even those that "state law prohibits." *Id.* at 25–26. In other words, the point of the provision is to assure collectors that, so long as a fee is "set forth in the initial agreement creating the debt, it would be of no consequence under 1692f(1) whether . . . state law prohibited its assessment." *Id.* To be sure, Carrington explains, the collector is still "subject to liability under state law," and even under "other sections of the FDCPA," but it would at least have assurance the fee didn't "violate 1692f(1)." *Id.* at 26.

This is, to put it mildly, a strange result. If Carrington concedes that the fees in its hypothetical scenario would be illegal and uncollectible regardless—including under "other sections of the FDCPA"—what purpose does this supposed "certainty" serve? Why would Congress have enacted a provision for the sole purpose of giving debt collectors *false* "certainty" about concededly illegal collection activity? This Court's precedent already recognizes that there can be "overlapping liability under

the FDCPA"—including under § 1692f(1). *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006). Attempts to collect a fee that's illegal under state law will often violate *both* § 1692f(1) *and* § 1692e(2)'s prohibition on false statements about the legal status of a debt. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949 (9th Cir. 2011) ("[T]he pursuit of unauthorized attorneys' fees in a collection suit violates both 1692f(1) and 1692e(2) of the FDCPA."); *Clark*, 460 F.3d at 1178 (pursuing an illegal debt "simultaneously misrepresents the debt in contravention of § 1692e *and* seeks to collect an amount that is not permitted by law in contravention of § 1692f(1)"). So the supposedly "independent effect" has little, if any, practical value. Any collector that seeks to collect an illegal fee will be liable regardless.

Even apart from its illusory effects, Carrington's theory misreads the law. We're aware of no authority, anywhere, for Carrington's interpretation of § 1692f(1), and Carrington cites none. But there's ample authority to the contrary. *See, e.g., Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 406–08 (3d Cir. 2000) (holding that debt collectors "violated section 1692f(1) regardless of the presence of any agreement authorizing the rates of interest and penalties, because state law specifically prohibits charging interest in excess of ten percent on the assigned claims"); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999) ("If state law expressly prohibits service charges, a service charge cannot be imposed even if the contract allows it."). As explained in our opening brief (at 8-10), this has been the interpretation of federal regulators for

three decades. *See* CFPB Br. 8–14, 12–23. Even the one unpublished case that Carrington cites (at 26), *O'Bryne v. Portfolio Recovery Associates, LLC*, 596 F. App'x 565, 566 (9th Cir. 2015), did exactly what Carrington says is unnecessary: It analyzed California case law to determine whether the interest assessed by a debt collector, though expressly authorized in the agreement creating the debt, was nevertheless in violation of California law. But, if Carrington's reading of the statute were correct, the mere fact of authorization in the agreement would have permitted the charges, and there would have been no reason to consider whether they were prohibited by state law.

So Carrington's attempt to identify a "separate independent effect" collapses. The only effect it identifies—providing false "certainty" that it's permissible to collect illegal fees—is both nonsensical and contradicted by precedent. And the company offers no persuasive rejoinder to the Fourth Circuit's compelling account of Congress's statutory design: Limiting the first exception to the original agreement "protects consumers from later add-ons in the way of various fees, preventing them from being blindsided down the road," *Alexander*, 23 F.4th at 378, a widespread problem when the FDCPA was enacted, *see* Pls.' Br. 4–7.

## B. In context, the phrase "permitted by law" is best read to require that a particular amount to be collected has been "expressly . . . permitted" by a specific "law."

The rest of Carrington's brief is largely devoted to demonstrating that the phrase "permitted by law," in isolation, could be read to sweep in the "common law foundation of American law, including its traditional notion of freedom of contract," such that collectors' clickwrap agreements may be deemed "permitted by" contract-law principles supporting the enforcement of those agreements. Carrington Br. 2. That theory is both beside the point and wrong on its own terms.

*First*, Carrington's arguments are beside the point because the phrase "permitted by law" doesn't appear in isolation in the U.S. Code—it appears in a particular statutory provision, a broad prohibition with two narrow exceptions sitting side by side. The proper approach is to treat the provision as one harmonious whole, not to set its exceptions "at war with one another." *Alexander*, 23 F.4th at 378.

"[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496 (2013). Justice Scalia once offered a common-sense example: "If you see a sign that says children under twelve may enter free, you should have no need to ask whether your thirteen-year-old must pay." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 25 (1997). Under the negative-implication canon (*expressio unius est exclusio alterius*), the

fact that Congress expressly limited the type of agreements that could justify charging extra fees "implies that there are no *other* circumstances" under which they may do so. *Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018). The two exceptions must be read together in this light: "Each lays out a particular source of authority (either the agreement creating the debt or law), and each requires that the source of authority affirmatively speaks to the amount's collection." *Alexander*, 23 F.4th at 378.

*Second*, Carrington is wrong on its own terms. The statute calls for "an amount" that is "permitted by law." To "evaluate whether [an amount] was 'permitted by law,' it is necessary to determine which 'law' [the amount]" is "permitted by." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). Carrington doesn't identify a "law" that fits this bill. Instead, it relies on general contract-law principles that would require enforcement of an agreement. But the statute's text focuses on whether an "*amount*" is "permitted by law"—not whether *an agreement* is permitted by law. *Id.* (emphasis added). "Contract law standing alone does not provide for the collection of any specific amounts—and no principle of contract law says debt collectors may collect pay-to-pay fees." CFPB Br. 16.

And while Carrington correctly points out that the word "permitted" can have different meanings, the word often "suggests affirmative sanction or approval." Garner's Dictionary of Legal Usage (3d ed. 2011). Its use in the phrase "permitted by law" thus suggests that "some form of affirmative sanction (that is, some 'law'), rather

than mere lack of prohibition, is required." *Alexander,* 24 F.4th at 377. Carrington's contrary reading can't be easily reconciled with the way that the Second, Third, Fourth, Seventh, and Tenth Circuits, along with federal regulators for at least thirty years, have understood this phrase.[1]

Finally, Congress's straightforward syntax—an adverb followed by two parallel verbs ("expressly authorized . . . or permitted")—indicates that "expressly" modifies both verbs in the series. *See* Pls.' Br. 29–30. Under "conventional rules of grammar," "when there is a straightforward parallel construction that involves all nouns or verbs in a series," the modifier applies to each of those verbs or nouns. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021). Carrington doesn't contest this basic grammatical point. Nor does it explain why this phrase ("expressly authorized . . . or permitted") should be read any differently from the example we gave ("forcibly assaults . . . or intimidates"). Instead, Carrington wrongly contends (at 27) that Congress's use of the word "or" "tends to cut off the reach of the modifier 'expressly.'" But the most classic and straightforward examples of the series-qualifier canon involve phrases with the word "or." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147–48 (2012) (*e.g.*, "*charitable* institutions or societies," "*intoxicating* bitters or beverages," and "*willfully* damage or tamper with").

---

[1] *See, e.g., Alexander,* 24 F.4th at 377; *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112 (7th Cir. 2008); *Johnson,* 305 F.3d at 1117; *Pollice,* 225 F.3d at 406–08; *Tuttle,* 190 F.3d at 13.

This was even true of the Supreme Court's most recent application of the canon, which involved a far more complex phrase with a postpositive modifier. *See Facebook*, 141 S. Ct. at 1169. The grammar here is straightforward—"in the absence of some other indication, the modifier reaches the entire enumeration." Scalia & Garner, *Reading Law* at 147.[2] The second exception thus requires that a specific "amount" be "expressly . . . permitted" by a "law"—not merely authorized by an agreement.

## II.   Pay-to-pay fees qualify as an "amount" under the FDCPA.

Carrington next insists that its pay-to-pay fees are permissible because they are not an amount "incidental" to the plaintiffs' mortgage debt. For this to be so, the text of § 1692f(1) must require such a showing and Carrington's fees must fall short of it. But as we explained in our opening brief (at 39–41)—and as the Fourth Circuit has since held, *see Alexander*, 23 F.4th at 376–77 & n.2—neither is true here.

**1.** Go back to the text. The FDCPA prohibits "[t]he collection of any amount" not expressly authorized by the original agreement or permitted by law—"(*including any interest, fee, charge, or expense incidental to the principal obligation*)." 15 U.S.C.

---

[2] Carrington badly misreads *United States v. Nishie*, 996 F.3d 1013, 1022 (9th Cir. 2021), which involved a complex 187-word sentence that did "not present a parallel construction" at all. It was not the mere use of the word "or" on its own—but the statute's "using the word 'or' twice"—that mattered there. *Id.* at 1023 & n.7 (contrasting a parent who instructs a child that "she can ride a scooter, a skateboard, *or* a bike with a helmet," in which *the modifier properly applies to each activity*, with a parent who tells her that "she can ride a scooter, *or* a skateboard, *or* a bike with a helmet," where the modifier may reasonably be read to refer only to bike-riding).

§ 1692f(1) (emphasis added). The statute doesn't limit its reach to "incidental" amounts. Rather, it lists those items as examples of the "amount[s]" that collectors are barred from requiring. Carrington, however, contends (at 35) that Congress didn't employ the explanatory "including" parenthetical to illustrate what "any amount" could be but instead to *modify* what amounts count as "any."

As the Fourth Circuit explained in *Alexander*, this argument makes no sense. The word "including," the court observed, "connotes . . . an illustrative application of the general principle," and is typically "an introductory term for an *incomplete* list of examples." *Alexander*, 23 F.4th at 376. The parenthetical clause thus provides no reason to read "any amount" to mean anything less than "what it says—*any* amount, whether or not that amount is incidental to the principal obligation." *Id.*

In response, the company urges that a parenthetical phrase can modify the language it follows. But the first example it points to shows that drafters who intend this effect choose words of exception like "but"—not words of illustration like "including." *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 701 (4th Cir. 2012). And its remaining examples actually illustrate the Fourth Circuit's point: They hold only that a parenthetical beginning with "including" *applies* to each of the terms it follows, not that it somehow limits their reach. *See United States v. Leed*, 981 F.2d 202, 207 (5th Cir. 1993); *United States v. Cook*, 938 F.2d 149, 152 (9th Cir. 1991). Carrington misreads these cases.

Carrington also, curiously, takes refuge in the very same canon against surplusage that it elsewhere faults us for invoking, urging that the parenthetical phrase would "serve no purpose" if Congress meant to "address all possible types of amounts." Carrington Br. 36. This argument is doubly flawed. The parenthetical phrase serves the clear purpose of illustrating the sorts of "amounts" that Congress had in mind. And even if that interpretation creates mild redundancy, Carrington's view trades one supposed surplusage for another because it renders the choice of words like "any" and "including" inexplicable.[3]

Ultimately, Carrington's argument amounts to little more than "linguistic sophistry." *Alexander*, 23 F.4th at 377. Because the FDCPA's text "straightforwardly applies to the collection of 'any amount,'" this Court should have "no trouble in concluding that convenience fees are an 'amount' under the FDCPA." *Id.*

**2.** Regardless, as the Fourth Circuit recognized, Carrington's fees *are* "incidental" to the plaintiffs' mortgages. *Id.* at 377 n.2. Something is "incidental" when it occurs as a minor, subordinate, unplanned, or casual consequence of something else. *See, e.g.*, The American Heritage Dictionary 650 (2d college ed. 1982) ("[o]ccurring or likely to occur as an unpredictable or minor concomitant"; "[o]f a

---

[3] Carrington also urges that a few other courts share its view. But the only circuit among them simply assumed an "incidental" requirement without explaining how it followed from the statutory text—indeed, the issue doesn't seem to have been disputed and was unnecessary to the case's outcome. *See Shula v. Lawent*, 359 F.3d 489, 492 (7th Cir. 2004).

minor, casual, or subordinate nature"); The Random House Dictionary of the English Language 966 (2d ed. 1987) ("happening or likely to happen in an unplanned or subordinate conjunction with something else"; "incurred casually and in addition to the regular or main amount"). And that is just what Carrington's fees are: minor expenses that the plaintiffs faced in the ordinary course of paying their underlying mortgage debt. "Without the mortgage payment, there is of course no convenience fee." *Alexander*, 24 F.4th at 377 n.2.

Carrington insists that "context" requires a more "restrictive" interpretation of the term. But the dictionary definitions it points to (at 37) aren't restrictive at all, and easily embrace the company's conduct here. Carrington's convenience fees were incurred in the execution of the "plan or purpose" of accepting payments for the plaintiffs' mortgage debt, and were thus a "minor consequence" of those mortgage payments. It makes no difference that the plaintiffs separately opted into the fees—just as meal or a cab is no less "incidental" to a work trip because the traveler affirmatively opted to order one.

This result is perfectly consistent with statutory context. Carrington's argument otherwise (at 37, 40–41) depends on a distorted version of the plaintiffs' argument: That the term "incidental" reaches "virtually any expense" a company could impose, "no matter how tenuous" to the underlying debt, so long as the debt was a but-for cause of the charge or, perhaps, was created earlier in time. But as we

have just explained, the question is simply whether a particular charge fits the ordinary meaning of "incidental." While one imposed as part of collecting a debt easily does so, the same would not be true of amounts that had no relationship to a principal obligation—such as fees a company collected for selling consumers its own financial products. Our reading of the statute thus tracks the statutory text—it doesn't "read" any requirements "out of the provision." Carrington Br. 40.

At bottom, it is Carrington's argument, not ours, that abandons § 1692f(1)'s text. That is because the company's view seems to be that a fee can only be "incidental" if it was "contemplated" by the plaintiffs' initial mortgage contract. *See id.* at 38–39. But the statute says exactly the opposite: It treats fees "expressly authorized by the agreement creating the debt" as only *one* type of the charges it encompasses.

## III. The plaintiffs' complaint properly alleges that Carrington is a debt collector.

Unable to show that its pay-to-pay fees comply with the FDCPA, Carrington throws out a halfhearted plea that the FDCPA should not apply here. This is so, it suggests (at 45), because the complaint fails to "plausibly allege that Carrington was acting as a 'debt collector'" by collecting mortgages in default. Carrington barely develops this point. It just asserts that the plaintiffs didn't plead "any factual statements showing that their mortgages were in default." Carrington Br. 45. But that is false: The complaint explicitly alleges that each plaintiff's loan was in default when it was acquired because it was "past due" or "delinquent." ER-219; *see also* ER-

225–28. Carrington doesn't explain what it thinks is "plainly insufficient" about these allegations. And nothing is; the plaintiffs' loan documents themselves give similar definitions of default. *See*, *e.g.*, ER-191 ("If borrower defaults by failing to pay in full any monthly payment . . ."). Carrington seemed to harbor no doubt on the issue when it was trying to collect from the plaintiffs. ER-211 ("I've just got to advise you anytime we do discuss the account with you, it is an attempt to collect on the debt. . . . Carrington Mortgage Services is a debt collector."). The plaintiffs' allegations are thus nothing like the sort of conclusory recitals of legal elements that fail to give fair notice to the opposing party and thus fail to state a claim for relief. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

## IV. The plaintiffs have preserved their state-law claims at every step.

As to the plaintiffs' state-law claims, Carrington doesn't dispute our main point: Because the district court treated all of the plaintiffs' claims as rising or falling together, reversal on the FDCPA claims requires reversal on the state-law claims too. Pls.' Br. 41–42 & n.2. That is all this Court needs to know.

The issues Carrington does devote its attention to simply aren't relevant here. It begins by insisting (at 46–47) that the district court did nothing wrong in treating the claims together, because the plaintiffs "admitted" that it would be appropriate to do so. Not so: Even if the plaintiffs agreed that *some* of their state-law claims parallel the federal statute, they did not—and could not—concede that *all* of them did so.

*See*, *e.g.*, ER-57–63, 68–71 (advancing separate arguments on certain California-law and breach-of-contract claims). As the parties agree, this issue belongs before the district court on remand. Carrington is no closer to the point when it complains (at 48) that the plaintiffs have somehow failed to "preserve . . . on appeal" their arguments that some of the state-law claims require separate analysis. The plaintiffs haven't asked this Court to address those issues in the first instance. Their point is only that the district court should work through them on remand. Pls.' Br. 42.

## V. In any event, Carrington would bear the burden to prove its contract-based affirmative defense.

Finally, Carrington asks this Court to reject our alternative affirmative-defense argument. But it never acknowledges this Court's on-point precedent, *McCollough*, 637 F.3d at 950, which held that a debt collector seeking to rely on a contract as a defense to liability under § 1692f(1) "failed to meet its burden . . . because it presented no admissible evidence of a contract authorizing a fee." If the burden fell on the defendant to substantiate the contract there, why would the rule be any different for the contracts on which Carrington seeks to rely here? The company never says.

Of the cursory arguments Carrington does offer (at 50–51), two depend on treating the plaintiffs as having argued below that pay-to-pay fees "*per se* violate § 1692f(1)." But that is both false, *see* ER-52–54, ER-47–50, and irrelevant: what's at issue is *whether* the plaintiffs had an obligation to anticipate what sort of "permitted by law" defense Carrington might come up with and plead its negation. On this, all

Carrington has to say is that our position would produce "illogical" results by making it too easy for a plaintiff to plead a violation of § 1692f(1). But that has never been one of the factors courts use to evaluate whether a statutory exception is an affirmative defense. As the case law Carrington ignores explains, the relevant factors include whether the statute employs "telltale" language like "unless," *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015); whether the statute adopts a strict-liability regime that shifts the costs of rulebreaking to the potential injurer, *see id.* at 361–62; and whether it would be "practical and fair" to allocate the burden to that party, *Smith v. United States*, 133 S. Ct. 714, 720 (2013). Here, each strongly favors allocating that burden to the defendant. Not only is the FDCPA a strict-liability statute built on the premise that debt collectors have outsize bargaining power, but this particular exception, as interpreted by Carrington, depends on factual matter *uniquely* within a defendant's knowledge—from deciding what call scripts to give its agents and coding its website to accessing a transcript of a particular call whenever it wishes. *See* Pls.' Br. 45–49.[4]

   To be sure, allocating the burden to defendants reduces the pleading burden

---

[4] The company also seems to suggest that, even if the exceptions at issue are affirmative defenses, plaintiffs still need to plead factual content negating them. Whatever sense that rule might make in other contexts, *see Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579 (9th Cir. 2021), it cannot apply where, as here, the statutory text is too general to enable a plaintiff to anticipate all the different defenses a defendant might offer—let alone where the defense at issue depends on facts uniquely in the defendant's possession.

on plaintiffs. But that's how affirmative defenses work; it doesn't mean they are a get-out-of-jail-free card. After all, an affirmative defense can be resolved on the pleadings if it is apparent from the face of a complaint. *See, e.g.*, *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilà*, 687 F.3d 465, 491–92 (1st Cir. 2012). And even when it can't, nothing precludes a defendant from seeking an early summary judgment on an affirmative defense if it can point to a contract that proves it. If those contracts are as straightforward as Carrington says, it is not too much to ask that defendants identify and plead this sort of defense themselves rather than asking borrowers to guess at it.

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

*/s/ Deepak Gupta*
Deepak Gupta
Linnet Davis-Stermitz
GUPTA WESSLER PLLC
2001 K Street, NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
*deepak@guptawessler.com*

Hassan A. Zavareei
Kristen G. Simplicio
TYCKO & ZAVAREEI LLP
1828 L Street, NW, Suite 1000
Washington, DC 20036
(202) 973-0900

Annick M. Persinger
TYCKO & ZAVAREEI LLP

10880 Wilshire Boulevard, Suite 1101
Los Angeles, CA 09924
(213) 425-3657

Patricia M. Kipnis
BAILEY & GLASSER LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
(856) 324-8219

James L. Kauffman
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW
Washington, DC 20007
(202) 463-2101

April 6, 2022                    *Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

This reply brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 4,610 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

*/s/ Deepak Gupta*
Deepak Gupta

*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2022, I electronically filed the foregoing reply brief with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta

*Counsel for Plaintiffs-Appellants*